## GRUND & CERRERO *vs.* J. F. and C. H. PENDERGAST.

The rule of damages which prevails in an action for the breach of a contract to transport goods from one place to another, where the owner is unable to procure the goods to be carried in any other manner, does not apply when, upon the failure of the carrier to perform, the owner of the goods can send them by another conveyance.

In such a case the owner must send the goods by another conveyance; and if he does so, he will be entitled to recover the difference between the price at which the defendants undertook to carry the property, and the price which the owner was compelled to pay, for its transportation.

The rule as to the form of the judgment, laid down in 7*th Wallace's Rep.* 258, is not binding on the state courts, and is not the correct one, but simply leads to great inconvenience, without any practical advantage.

THIS is an appeal from a judgment rendered for the plaintiffs on the report of a referee.

The action was to recover damages for the breach of a contract to carry petroleum on the deck of the bark *Contest*, from New York to Cadiz, at $1.75 per barrel, payable in gold. The referee found the following facts, viz: That on the 24th day of October, 1865, the defendants entered into a contract with the plaintiffs to carry, on freight for them

Grund *v.* Pendergast.

on board the bark *Contest*, then lying in the port of New York, one hundred and eighty-five barrels of petroleum, and deliver the same at Cadiz, in the kingdom of Spain, at the price of $1.75, gold, per barrel, at twenty reals vellar to the dollar, to be paid at Cadiz upon the delivery of the said petroleum. That on or about the 4th day of November, 1865, the defendants gave notice to the broker, through whom the contract had been made, that the bark *Contest* was ready to receive the said petroleum on board, and the broker on the same day informed the plaintiffs thereof. That on the 8th day of November, 1865, and within a reasonable time after the said notice was so given, the plaintiffs tendered and offered to deliver the said petroleum on board the *Contest*, but the officers in charge of the said bark refused to receive the same on board, and the plaintiffs on the same day notified the defendants thereof, and insisted upon the fulfillment of the said contract, which the defendants refused. That the bark *Contest* sailed from the port of New York for Cadiz on or about the 10th day of November, 1865, without receiving on board the said one hundred and eighty-five barrels of petroleum. That the plaintiffs subsequently, and on or about the 20th day of November, 1865, shipped the said one hundred and eighty-five barrels of petroleum to Cadiz on freight for hire on board the bark *Young Rover*, at the price of $4 per barrel in gold, together with five per cent primage, payable in gold, at the rate of twenty reals vellar to the dollar, payable at Cadiz, on the delivery of the said petroleum. That the said bark *Young Rover* was the only vessel in the port of New York offering or willing to take the said pretroleum on board as freight after the sailing of the bark *Contest*. That the difference between the agreed rate of freight by the *Contest* and the freight actually paid for the said petroleum on board the *Young Rover*, computed in the currency of the United States, including

exchange, was $793.65, which sum was paid therefor by the said plaintiffs on the 19th day of March, 1866.

The referee's conclusion of law was, that the plaintiffs were entitled to judgment in their favor against the defendants, for the said sum of $793.65, with interest thereon from the said 19th day of March, 1866, besides their costs, and a suitable allowance to be fixed by the court.

*E. P. Wheeler*, for the appellants.

I. The true rule of damages for the breach of a contract to carry freight is the market value of the goods at the port of destination, less their value at the port of shipment, with the freight added. (*Bracket* v. *McNair*, 14 *John.* 170. *Amory* v. *McGregor*, 15 *id.* 23. *O'Connor* v. *Foster*, 10 *Watts*, 418.) If there be any exception to this rule, it is of the case where, there being a regular mode of conveyance between the two ports, another conveyance of the same sort as that stipulated by the contract can be procured at a regular market rate. The only reason for introducing such an exception would be to require the shipper to use ordinary diligence to get another conveyance, and prevent his speculating at the owner's expense. In such a case, the rule of damages contended for by the plaintiffs, to wit, the difference between the market rate of freight and that agreed to be paid, has an apparent equity. The shipper gets the equivalent of what his contract calls for, and the rule is fixed and definite. But in the case at bar, the rule suggested has no application. 1. The plaintiffs got more than the defendants agreed to give them. Their petroleum was carried under deck at a saving of $120 insurance, and at a greatly diminished risk. 2. To obtain this advantage, the plaintiffs paid twice the market rate. The testimony to this point is uncontradicted. If they could obtain this advantage at the defendants' expense, they might have chartered the *Great Eastern* to take their petroleum. Once concede that the

Grund *v.* Pendergast.

law allows them to obtain any advantage they choose at the defendants' expense, and there is no limit to the extortions and injustice that might be practiced. The plaintiffs are in this dilemma: Either they could get their petroleum carried in the way the defendants agreed, or they could not. If they could, they were bound to do it, and did not. If they could not, the first rule of damages stated is the only one, and the referee's finding of law is unsustained by the facts, as there is neither finding nor testimony to fix the damages within this rule. Indeed, the plaintiff swore he did not remember what the petroleum cost, nor what it was worth, and refused to produce the books showing this. The exceptions to this finding are, therefore, well taken. So is the exception to the refusal to dismiss the complaint. So is the exception to the referee's refusal to admit evidence of the cost of the petroleum in New York.

II. If the plaintiffs were entitled to recover the difference between the freight paid and that agreed upon, they can only recover it in gold. The contract was, by its terms, payable in "gold," and damages for the breach of such a contract are recoverable in gold; and the judgment must be so expressed. This point was decided in *Butler* v. *Horwitz*, (7 *Wall.* 258,) and the judgment below was there reversed, because it added the premium on gold and gave judgment in currency. This point is raised by the exception to the referee's findings, and by the exception to the admission of the evidence on this branch of the case.

III. In any event, the defendants were entitled to have the amount saved in insurance, by reason of the improved mode of carriage, deducted from the recovery. This really and in effect reduced the freight actually paid.

IV. The defendants, in any event, were entitled to the benefit of their offer to carry the petroleum at $2 per barrel. They were able to carry it out; their good faith in making it is not impugned. It was not even noticed by

the plaintiffs, but they immediately effected a charter at $4 per barrel. They did not ask the name of the vessel tendered by the defendants, or the day she was to sail, and cannot now reject the offer on the ground that these were not given. They would have been given had the objection been taken at the time. It is like the case of a tender of bank notes. If a man refuse the tender, he must specify his objection, or it is waived.

V. The judgment should be reversed. The plaintiffs refused, on the trial, to produce their books, and the account of sales rendered them by their agent in Spain, so as to enable the referee to fix the true rule of damages. If a new trial is granted, it should, therefore, be upon the payment of costs of the trial and the appeal, and the order of reference should be vacated.

*Henry Whittaker*, for the respondents.

I. The first four exceptions taken by the appellants to the referee's report are wholly nugatory and untenable. For they are taken wholly to his decisions on questions of fact on which there is evidence to support the results deduced by him. His decisions, therefore, on those questions are conclusive, and cannot be reviewed. For there is no ground on which it can be reasonably contended that these decisions are contrary to evidence, or even contrary to the weight of evidence. The whole weight of evidence is in their favor, and the most cursory examination of the testimony will show that if the referee had decided otherwise, his decision could not have been sustained.

II. And the facts thus found by the referee established conclusively the existence of the plaintiffs' cause of action. For they establish a positive contract to carry the petroleum in question at an agreed rate; a tender of that petroleum for carriage in due season; a willful breach of contract on the part of the appellants, and damages resulting from that breach, such damage being " the difference between the con-

Grund *v.* Pendergast.

tract price and the price which the respondents were compelled to pay to others for the same services." The plaintiffs' cause of action is therefore perfect, and the decision of the referee the necessary result of its establishment. The burden of showing an excuse rested with the appellants, and that burden they have not sustained. The plea that they offered to transport the goods at the same price, and that the respondents refused their offer, is wholly unsustained by proof. (*Costigan* v. *Mohawk and Hudson R. R. Co.*, 2 *Denio*, 609; *approved*, 28 *N. Y.* 77.)

III. The only real question that the case presents is as to the quantum of damages, and on that point the referee's decision was correct. For it was the only decision he could have come to; all the evidence before him tending to one result, and to one result only; such result being the result to which he came. The burden of showing that a different rule of damages should be adopted rested upon the appellants. They claimed a reduction, and, making such claim, were bound to show facts on which that claim could be based. They were wrongdoers by reason of their willful breach of contract, and every presumption lies against them and in favor of the respondents—the parties injured by that breach. (*Costigan* v. *Mohawk and Hudson R. R. Co.*, 2 *Denio*, 609.)

IV. But the rule of damages applied by the referee was the correct, and the only correct rule. The respondents having proved their cause of action, are entitled to such damages as will give them a full and complete indemnity in respect of the breach of contract committed by the appellants. "They are entitled to be placed in the same situation, in a pecuniary point of view, as they would have been in if the appellants had honestly performed their engagement. (*Ogden* v. *Marshall*, 4 *Seld.* 340, *and cases cited. Nourse* v. *Snow*, 22 *Greenl.* 208, [210.] *Cooper* v. *Young*, 22 *Geo.* 269, [272, &c.*] *O'Connor* v. *Foster*, 10 *Watts,*

418, [421, 422.] *The Flash,* 1 *Abb. Adm. Rep.* 119. *The Zenobia, Id.* 80. *Sedg. on Dam.* 402, 405, *n.,* 4*th ed.*) And the rule of damages adopted by the referee has been applied by the Court of Appeals and the admiralty courts under circumstances analogous to the present. (*Ogden* v. *Marshall,* 4 *Seld.* 340. *The Flash,* 1 *Abb. Adm. Rep.* 119. *The Zenobia, Id.* 80.) And it is now settled that a liability arising under a contract, payable in gold, must be satisfied in gold or its equivalent, and *a fortiori* that is the rule where, as here, such payment in gold is to be made in a foreign country. (*Bronson* v. *Rodes,* 36 *How. Pr.* 365. *S. C.* 5 *Abb. N. S.* 247. *Luling* v. *Atlantic M. Ins. Co.,* 50 *Barb.* 520.) And the mode of liquidating those damages at the place where the freight contracts both called for such payment, and then drawing on the appellants for the difference between the contract price and the price actually paid, reducing that price into currency of the country on which that draft was drawn, and where it had to be paid, was the direct, business-like and proper, and in fact the only business-like and proper mode of effecting that liquidation. And on comparison of the price of gold at New York, as stated by the respondents in their letter of instruction to Rudolph, under which the settlement was made, *i. e.,* above 148 premium, and the estimated difference between gold at Cadiz and currency in New York, at which the draft was actually sold by Nocetti, *i. e.,* 40 per cent only, it will be seen that that estimate was a very favorable one for the defendants, and probably reduced the amount actually payable by them. But it rested with them to show the contrary, (*Costigan* v. *Mohawk and Hudson Railroad Company, above cited ;*) and that they have not attempted to show. The rule of damages applied by the referee was therefore the correct, and the only correct rule, and was properly applied.

V. The remaining exceptions are equally unsustainable, because the referee's award of judgment in favor of the

Grund *v.* Pendergast.

plaintiffs is the necessary result of the facts found by him, and of the proper appplication of the established rule of law to those facts as found.

*By the Court,* CARDOZO, J.  The defendant seeks to apply to this case the rule of damages which would obtain if the plaintiff could not have procured the goods to be sent at all; as, for instance, by reason of there being no other vessel, or an embargo being laid, or a canal freezing. (*Bracket* v. *McNair*, 14 *John.* 170.  *O'Connor* v. *Foster*, 10 *Watts*, 418.)  But that rule does not prevail when the party can send by another conveyance.  Then he must do so, and he will be entitled to recover, as was allowed here, the difference between the price at which the defendants undertook to carry the property, and the price which the plaintiffs were compelled to pay for its transportation. (*Ogden* v. *Marshall*, 4 *Seld.* 340.)

The letter of the defendants, of November 20, 1865, can scarcely be deemed an offer.  Neither vessel, rate nor time was mentioned.  And from the testimony as to the interviews between the parties, it is plain that the defendants did not intend to make any definite proposition on the subject.  I think, therefore, that the referee's finding, that the vessel by which the plaintiffs sent was the only one offering or willing to take the petroleum after the sailing of the *Contest*, cannot be disturbed.

We think the rule as to the form of the judgment laid down in 7 *Wallace*, 258, not binding on the State courts, and that it is not the correct one, but simply leads to great inconvenience, without any practical advantage.

The judgment should be affirmed.

[FIRST DEPARTMENT, GENERAL TERM, at New York, November 1, 1870. *Ingraham*, P. J., and *Cardozo*, Justice.]