## STEFFEN, Appellant, v. MISSISSIPPI RIVER & BONNE TERRE RAILWAY COMPANY.

### Division One, May 15, 1900.

Freight Contract: MUTUALITY: BREACH: PROSPECTIVE PROFITS: DAM-AGES. Plaintiff wrote to a railroad company for a rate for the shipment of 500 carloads of crushed granite, and was informed that it would be 80 cents a ton to St. Louis and one dollar to East St. Louis, provided 500 tons were shipped in the year 1896. He informed the company that the rates were satisfactory, and made a collateral agreement on the strength thereof to pay a royalty of 10 cents per ton to the quarry owner. Thereafter the railroad can-

VOL. 156, APRIL TERM, 1900. 323

Steffen v. Miss. Riv. & Bonne Terre Ry. Co.

celled its rates before plaintiff could prepare his material for shipment, and refused to ship it at any price less than its regular rates, and plaintiff shipped no granite to the persons to whom he had concontracted to sell it, and they permitted him to cancel their contract without damage, and plaintiff sued the road for the profits he would have made on the material had the road shipped it at the designated rates. *Held,*

1. The alleged freight contract was without consideration, and was not a mutual agreement.

2. As the railroad company had no information of the terms and nature of the contract out of which plaintiff's profits were to arise, and could not have contemplated them, the evidence as to what his profits would have been by a re-sale was properly excluded.

3. Plaintiff's remedy, given a legal contract, was to have carried out his collateral agreements, shipped the crushed granite, and then sued the railroad for the difference between the amount of freight charges actually paid and what the amount would have been at the designated rate.

Appeal from St. Louis City Circuit Court.—*Hon. Jacob Klein,* Judge.

AFFIRMED.

*Charles & Lackey* for appellant.

(1) Where one of the parties to a continuing contract notifies the other that he will not abide by its terms, such other party may treat the entire contract as at an end and sue for the breach; and he is not bound to offer to perform on his part. Pond v. Wyman, 15 Mo. 183; Black River Lumb. Co. v. Warner, 93 Mo. 389; Hinckley v. Pittsburg Steel Co., 121 U. S. 272; Anvil Mining Co. v. Humble, 153 U. S. 551; Claes & Lehnbeuter Mfg. Co. v. McCord, 65 Mo. App. 509. (2) And where the defendant carrier occasions a breach of contract by refusing, in advance of the time for performance, to receive goods for shipment according to the terms of the contract, it can not defend on the ground that the plaintiff did not have the goods contracted to be shipped. Taylor v. Steamboat Robert Campbell, 20 Mo. 254. (3) The damages sought to be recovered in this suit are based

upon the profits expected to be realized by the plaintiff from
the performance of certain contracts collateral to the one
sued upon.    Such profits were in contemplation of the par-
ties at the time of entering into the contract.    2 Sedg. on
Damages (8 Ed.), sec. 740; Jordan v. Patterson, 67 Conn.
473; Booth v. Mill Co., 60 N. Y. 487; Blumenthal v. Stahle,
98 Ia. 722; Hydraulic Eng. Co. v. McHaffie, 4 Q. B. Div.
670; Fletcher v. Taylor, 17 C. B. 21.    (4) If a carrier con-
tracts to haul the seller's goods at a certain rate and refuses
to do so; and if at the time of making the said contract, the
parties thereto had in contemplation certain collateral con-
tracts entered into, or about to be entered into, by the seller
on the strength of the contract with the carrier, the profits
reasonably expected to be derived from the fulfillment of
such collateral contracts are recoverable by way of damages
upon breach of the contract of shipment.    Jordan v. Patter-
son, 67 Conn. 473; Booth v. Mill Co., 60 N. Y. 487; Wake-
man v. Mfg. Co., 101 N. Y. 205; Rogan v. Railroad, 51 Mo.
App. 674; Connoble v. Clark, 38 Mo. App. 482; Blumenthal
v. Stahle, 98 Ia. 722; Grindle v. Eastern Express Co., 67
Me. 317; Trigg v. Clay, 88 Va. 330; Cobb v. Railroad, 38
Ia. 631; I. C. Railroad, Co. v. Cobb, 64 Ill. 128; Hadley v.
Baxendale, 9 Exch. 353; 2 Sedg. on Damages (8 Ed.), sec.
740; Hydraulic Eng. Co. v. McHaffie, 4 Q. B. Div. 690;
Schulze v. Railroad, 19 Q. B. Div. 30; Waters v. Towers, 8
Exch. 401; Fletcher v. Taylor, 17 C. B. 21.    (5) When a
carrier, having contracted to haul a seller's goods at a certain
rate, refuses to do so, the seller may recover in damages the
profits reasonably expected to be derived from the sale of
the said goods, provided it appear that the carrier knew at
the time of entering into the contract of shipment that the
goods were to be transported for sale.    Connoble v. Clark,
38 Mo. App. 482; Stewart v. Patton, 65 Mo. App. 24;
Hinckley v. Beckwith, 13 Wis. 34; Jordan v. Patterson, 67
Conn. 473; Cobb v. Railroad, 38 Ia. 631; Trigg v. Clay, 88

Va. 330; Hadley v. Baxendale, 9 Exch. 353; Frazer v. Gaudet, L. R. 6 Q. B. 199; Horne v. Railroad, L. R. 7 C. P. 583; Cockman v. Ashland, 54 Wis. 628; Salvo v. Duncan, 49 Wis. 155.

*Nagel & Kirby* for respondent.

(1) The first question to be considered is: Was there a contract? We submit there was not, because, (a) The parties had never come to an understanding with reference to the subject-matter of the correspondence. It does not appear from the correspondence that the parties at any time had in mind anything definite as to quantity or destination of shipment. (b) The alleged contract lacks all mutuality, and was, therefore, not binding upon either party. C. & G. W. Railroad Co. v. Dane, 43 N. Y. 240; Lindell v. Rokes, 60 Mo. 249; Lewis v. Ins., 61 Mo. 534; Glover v. Henderson, 120 Mo. 367; Jones v. Durgin, 16 Mo. App. 370; Railroad v. Jones, 53 Ill. App. 431; Mers v. Ins. Co., 68 Mo. 127; Glass v. Rowe, 103 Mo. 513; Thorne v. Deas, 4 Johns. 84; Campbell v. Lambert, 36 La. Ann. 35; Stembridge v. Stembridge's Adm., 87 Ky. 91. (2) It was plaintiff's duty, in any event, to reduce the damages as much as he reasonably could. This principle is elementary. Douglass v. Stephens, 18 Mo. 362; Waters v. Brown, 44 Mo. 302; Railroad v. McGrew, 104 Mo. 282. It has been repeatedly applied in cases of carriers; and in the absence of unusual conditions the measure of damages is the difference between the rate claimed, and the rate at which the same goods could have been shipped. Spurlock v. Railroad, 93 Mo. 530; Railway v. Flanagan, 113 Ind. 488; Railroad v. Ragsdale, 46 Miss. 458; Cooper v. Young, 22 Ga. 269; Ogden v. Marshall, 8 N. Y. 340; Grund v. Prendergast, 58 Barb. 216; Bailey v. Damon, 3 Gray, 92. (3) And in any event the damages insisted upon in this case are too remote, uncertain and

speculative to be admitted.  Taylor v. Maguire, 12 Mo. 313; Taylor Mfg. Co. v. Hatcher & Co., 39 Fed. Rep. 440; Hunt v. Railroad, 13 Sawy. 516; Montgomery Co. U. A. Soc. v. Harwood, 126 Ind. 440; Baltimore Railroad Co. v. Pumphrey, 59 Md. 390; Engelsdorf v. Sire, 64 Hun. 209; Reed Lumber Co. v. Lewis, 94 Ala. 626; Griffin v. Colver, 16 N. Y. 489; Railroad v. Ragsdale, 46 Miss. 458.

VALLIANT, J.—This is a suit for damages for the breach of an alleged contract relating to freight rates.

The amended petition, in brief summary, omitting details, is to the effect that in April, 1896, defendant knew that plaintiff was about to enter into a contract with a concern that owned a quarry in southeast Missouri to ship from its quarry to St. Louis and East St. Louis 500 car loads of crushed granite in 1896 and a like quantity in 1897, and as much more as plaintiff could handle, and thereupon defendant for a valuable consideration agreed with plaintiff to carry the granite for 80 cents a ton to St. Louis and $1 per ton to East St. Louis, up to the 31st December, 1896, and to renew the contract at the same rate for 1897, provided plaintiff shipped 500 car loads during 1896; that upon the faith of this agreement plaintiff concluded a contract with the quarry company to lease a portion of the quarry for two years, agreeing to pay it a royalty of ten cents a ton for crushed granite produced.  The petition then avers that after this contract had been entered into with the quarry company, the defendant refused to perform its contract with the plaintiff, and thereby the plaintiff was unable to ship granite at a profit, and sustained $25,000 damages in the loss of profits on the re-sale of the granite, for which, with costs, judgment is prayed.

The defendant by its answer denied that it entered into the contract alleged, stated that it was a railroad corporation, operating a railroad under the laws of this State and as

such was in duty bound and in fact was ever ready and willing to furnish transportation to plaintiff, but that he at no time offered to the defendant granite for shipment, either under his alleged contract or on any other terms; that in fact plaintiff was at no time prepared to ship crushed granite and was not at any time since the date of the alleged contract in a position to operate the quarry or ship crushed granite therefrom, and has sustained no loss.    The reply denied the allegations in the answer and averred that before plaintiff could prepare the granite for shipment, defendant refused to carry out its contract and so notified the plaintiff, whereby defendant waived a tender of shipment.

When the cause came to trial the defendant objected to any evidence being heard in support of the amended petition on the ground that it did not state facts constituting a cause of action, which objection was overruled, and the trial progressed.    The testimony introduced by plaintiff tended to show that he had been in the granite and contracting business for six or seven years, and was on April 11, 1896, about to lease Turpin quarry, situated in St. Francois county, very near defendant's tracks; the nearest other railroad was six or eight miles from the quarry, and was reached only over rough county roads; that plaintiff was also about to enter into a contract to furnish 10,000 tons of crushed granite for use in the erection of what is known as the Liggett & Meyers Tobacco building in St. Louis, and with these objects in view wrote the defendant the following letter:

"Bonne Terre, Mo., April 11, 1896.

"Mr. J. Burns, Supt. M. R. & B. T. Ry. Co., Bonne Terre, Mo.

"Dear Sir:

"I am about to enter into a contract with the Southeast Missouri Stone & Lumber Company to ship five hundred cars crushed granite out of their quarry in the year 1896;

also, five hundred cars in the year 1897, or as many more as I can ship. I would like to get a rate per car of twenty-five tons to thirty, and over, delivered at Liggett & Meyers' new building, situated on Folsom avenue near the Pacific railroad. I must have at least four cars per day, beginning about ten days from date, every day until the 1st day of September, 1896. I would also like to get a rate for two or three cars per day to your Miller Street yards, St. Louis; also, East St. Louis. I expect to invest about fifteen thousand dollars in machinery in a plant located in the above mentioned quarries; therefore, I would like to get rates so I may know what I may expect to pay for freight. I understand that I would get a rate to Liggett & Meyers' for $20 per car. You will please let me know as soon as possible, as I have to sign the contract with Liggett & Meyers, and furnish a bond to deliver the granite at the rate of 100 tons per day, 10,000 tons all told. The quarry on your road is known as Turpin Quarry. Will you be kind enough to let me know at your earliest convenience? I would also like to get a rate on a car load of machinery, such as a boiler, engine, Gates crusher, etc., from St. Louis to quarry.

"Respectfully yours, John J. Steffen.
"2750 Park Avenue, St. Louis, Mo."

To which defendant replied by letter as follows:

"Mississippi River & Bonne Terre Railway.
"Office of General Superintendent.
"J. Burns, General Superintendent.
"Bonne Terre, Mo., April 13, 1896.
"Mr. John J. Steffen,
"2750 Park Avenue, St. Louis, Mo.:

"Dear Sir—Answering your favor of April 11, 1896, wherein you state that you are about to enter into a contract with the Southeast Missouri Stone & Lumber Company to ship 500 car loads of crushed granite out of their quarry in

VOL. 156, APRIL TERM, 1900.        329

Steffen v. Miss. Riv. & Bonne Terre Ry. Co.

the year 1896, also 500 car loads in the year 1897, or as many more as you can ship, and asking that a rate be named on same, including delivery on tracks of Missouri Pacific railway at the Liggett & Meyers' new building, situated on Folsom avenue, St. Louis, Mo., the rate on crushed granite from Turpin Quarry located three miles south of Doe Run, Mo., to sidetrack Mo. Pacific railway at or near Liggett & Meyers' new building on Folsom avenue, St. Louis, Mo., will be four cents per hundred weight, or 80 cents per net ton, 2,000 lbs., minimum weight 25 tons per car. This rate expires December 31, 1896.   Will name rate of four cents per hundred weight, 80 cents per net ton, 2,000 lbs., minimum weight 25 tons per car, on crushed granite from Turpin's Quarry to Miller Street yard, Wiggin's Ferry tracks, St. Louis, Mo.   This rate expires December 31, 1896.   On crushed granite from Turpin's Quarry to East St. Louis any delivery on East St. Louis Connecting Railway or Wiggin's Ferry tracks on east side of the river, five cents per hundred weight or $1.00 per net ton, 2,000 lbs. minimum weight 25 tons per car.   This rate expires December 31, 1896.

"We will, however, agree to renew these rates for the year 1897 and up to and including April, 1898, provided the 500 or more are shipped during the year 1896, and 500 or more cars are shipped during the year 1897.   These rates can not be extended beyond April, 1898, unless otherwise specially agreed upon by the M. R. & B. T. Ry. Co.

"If you conclude to use above rates, would like to be advised so we can arrange for ample supply of cars so that there will be no delay in moving the business promptly. It must be distinctly understood that the 500 cars to be shipped in 1896, and the 500 cars to be shipped in 1897 shall be distributed throughout the shipping season so that we will not be called upon to move it in unreasonable quantities.

"The rate on machinery in car loads from Wiggin's Ferry tracks, St. Louis, Mo., to Turpin's Quarry, three miles south ·of Doe Run, 21 cents per hundred weight, minimum weight 24,000 lbs. per car. Please advise me if accepted. "Yours truly, J. Burns, General Superintendent and F. A."

The plaintiff replied to this as follows:

"St. Louis, Mo., April 14th, 1896.

"Mr. J. Burns, General Superintendent and F. A.

"Dear Sir—Received your letter in regard to the rates. The rates to Miller St., St. Louis, and East St. Louis, are much higher than I expected to get. I understood that the rates to St. Louis and East St. Louis were the same on your road. . I expected to ship a good deal over that route, but I find that your rate is the same as the Iron Mountain people. Mr. Robert Sellers told me that he thought that you would give me a very low rate over that route. Also the machinery rate is about three times as high as the Iron Mountain people charged me. Unless you assist me in getting a low rate I am afraid I will not be able to do much shipping. If you care anything about Liggett & Meyers' contract you will have to give me a much better rate to other points on your road to justify me in moving my plant. If you can do any better, let me know by return mail.

"Yours,     John J. Steffen."

And defendant sent the following in reply:

"Mississippi River and Bonne Terre Railway Co.

"J. Burns, Gen. Supt. `

"Bonne Terre, Mo., April 16, 1896.

"John J. Steffen, Esq.,

"2750 Park Ave., St. Louis, Mo.

"Dear Sir—Making answer to your letter dated April 14th, regarding rates on granite from Turpin's Quarry to St. Louis, Mo., and East St. Louis, Ill., would say that the

figures named are the best we are able to name at present. The figure of 80 cents per ton or 4 cents per hundred weight minimum 25 tons per car is just what is asked for in your letter to me under the date of April 11, 1896, and was concurred in by Messrs. Setz and Sellers at the time. I trust you can see your way clear to use the rates named and give us some business. Yours truly,

"J. Burns."

That is as far as the making of the contract by letter went; the rest of the testimony relied on to show a contract consists in the testimony of plaintiff as to what passed between himself and Burns in a personal interview in St. Louis on April 18, the substance of which was that the plaintiff told Burns that the rates offered by him were satisfactory.

That is all the evidence there was tending to show that a contract was made as stated in the amended petition. There was evidence showing a lease by plaintiff of part of the Turpin Quarry dated April 13, 1896. This was executed the day before plaintiff received the first letter of Burns giving the rates.

Plaintiff offered in evidence a contract with Clark & Sons, dated April 14th, 1896, by which he was to deliver crushed granite at the Liggett & Meyers buildings, which on objection of defendant was excluded by the court. This was offered as a foundation to other evidence to show the profit the plaintiff would have made in the performance of that contract and which on his theory he was rendered unable to perform because of the defendant's failure to perform its contract. There was also evidence for the plaintiff tending to show that he had entered into some engagements looking to the furnishing of machinery to operate the quarry. Then followed in evidence a telegram from defendant as follows:

"Western Union Telegraph Office, via Riverside,

　　　　　"Bonne Terre, Mo., April 20, 1896.
"John J. Steffen, 2750 Park Ave.

　　　"Referring to my letter of April 13, 1896, quoting rate of 80 cents per net ton on crushed granite from Turpin Quarry to Liggett & Meyers' switch near Folsom Avenue and Tower Grove Station, Missouri Pacific Railway's tracks, and rate of 80 cents per net ton to Miller St., Wiggins Ferry yard, and rate of $1.00 per net ton to East St. Louis, Ill., Wiggins Ferry tracks and East St. Louis Connecting Railway, is hereby cancelled. Nothing less than regular tariff rates will be allowed on granite moved from Turpin's Quarry to the points named.

　　　　　　　　　　　　　　"J. Burns."

　　　To which the plaintiff replied as follows:

　　　　　　　"St. Louis, Mo., April 22d, 1896.
"Mr. J. Burns, Gen'l Supt.:

　　　"Dear Sir—Received your letter of April 20, 1896, and contents carefully noted. On the strength of your letters of April 13 and 16, 1896, giving me freight rates to Liggett & Meyers' building and other points on your road, I have made contracts in accordance with your rates for the entire season ending December 31, 1896. You also gave me a rate of 9 cents for machinery, when I met you Saturday, the 18th, in your office in St. Louis. I then accepted your proposition and everything was satisfactory. I will hereby notify you as general superintendent and freight agent that I have accepted your freight rates and expect you to fulfill your contracts strictly in accordance with the rates that you gave me April 18, 1896, when I met you in St. Louis. I would like to hear from you and see what you intend to do about it.　　　　　Yours respectfully,

　　　　　　　　　　　"John J. Steffen."

The testimony then tended to prove that on May 8th plaintiff forfeited his lease of the quarry.  It also appeared that he cancelled his contract with Clark & Son without penalty.  Testimony was offered to show the quantity of crushed granite that the Turpin Quarry could have been made to yield, the cost of production and delivery on the railroad and the profit plaintiff could have realized on its re-sale in St. Louis, all of which on objection of defendant the court excluded.  It was shown that the only other railroad was several miles from the quarry, and could be reached only over rough country roads.  The court excluded the testimony tending to show the profit the plaintiff could have made under his contract with Clark & Sons, and what he could have made by a re-sale of the crushed granite in the city, on the ground that it was too remote, but ruled that the plaintiff's liability for royalties upon the contract with the quarry company was a proper element of damages in the case.  Exceptions to the rulings were duly preserved. In view of the court's ruling on the evidence relating to the measure of damages the plaintiff took a nonsuit with leave, and in due time filed a motion to set it aside which being overruled the plaintiff brings the cause here by appeal.

I.   In the petition it is stated that the defendant's agreement to carry the granite for 80 cents and $1 a ton was for a valuable consideration, but what that consideration was is not stated.  The plaintiff's testimony does not undertake to show any consideration to support the alleged agreement on the part of the railroad company.

The correspondence on neither side was an invitation to the other to enter into a positive contract on the one side to furnish for shipment and on the other to carry 500 car loads of granite in 1896, and a like quantity in 1897 at a given rate; but on the part of the plaintiff it was a notification of his expectation to ship that quantity and an inquiry as to what it would cost; and upon the part of the defendant its

willingness to carry the same at the rates named, provided
the quantity was reasonably distributed throughout the sea-
son.    When the plaintiff replied on the 14th to defendant's
letter of the 13th of April, he did not then say that he would
bind himself to ship any definite quantity, but complaining
that the rates were too high he said:   "Unless you assist me
in getting a low rate I am afraid I will not be able to do
much shipping."   And defendant's answer of April 16th to
that letter still did not indicate that an obligation on the one
side to ship and on the other to carry was intended; on the
contrary, the letter after saying that the rates given in the
first was the best the defendant could do, concludes:   "I
trust you can see your way clear to use the rates named and
give us some business."

Giving to the plaintiff's testimony its full force, it only
shows that he informed the railroad company that he was
about to engage in a business which contemplated the ship-
ment for sale in St. Louis, of a large quantity of crushed
granite, and before making his contracts he desired to know
what rates he could get from the railroad company for carry-
ing the material, the railroad company responded naming
certain rates at which it would do the carrying, and the
plaintiff replied that that was satisfactory and made his col-
lateral contracts accordingly.   But the plaintiff did not on
his part agree to ship over defendant's road 500 tons of
granite in 1896, and a like quantity in 1897, or any quantity,
at those rates, then or at any time.

Suppose the agreement had been left just as the plain-
tiff says it was when he and Burns parted in St. Louis on
April 18th, with no further communication between them,
and suppose after that the plaintiff had failed to offer de-
fendant any granite for shipment, while the defendant was
all the time ready and willing to carry the granite at the rate
named, could the defendant recover of plaintiff damages for
a breach of the contract on his part ?   To such a demand on

the part of the railroad company the plaintiff could well say that he had made no contract binding himself to ship 1,000 car loads of granite, but had only inquired the rates for his information and when informed expressed himself as satisfied with them. There could be no contract by the defendant to carry unless there was a corresponding contract by plaintiff to ship. [C. & A. Railroad v. Jones, 53 Ill. App. 431; C. & G. E. Railroad v. Dane, 43 N. Y. 240; Thayer v. Burchard, 99 Mass. loc. cit. 518, 519; Campbell v. Lambert, 36 La. Ann. 35.]

We do not say but that a railroad company might so mislead a party to his disadvantage by holding out inducements in the way of low freight rates as to make itself liable if it should refuse to carry out its proposal, even though no contract had been made. But the plaintiff in this case has not based his suit on a theory of estoppel, he tried it in the circuit court and seeks to maintain it here on the strength of an alleged contract. We think the proof fails to show a mutual agreement.

II. But assuming that there had been a contract, the plaintiff had no right, when defendant refused to carry the freight at the rate named, to throw up his collateral contracts with the quarry company and Clark & Sons, and then require defendant to pay him by way of damages for its breach of the contract the amount that he might or probably would have made if he had been able to carry them to a successful termination.

In the first place there was no foundation laid in the petition for damages for loss of profits on the Clark & Sons contract. The petition states that defendant was informed that plaintiff was about to enter into a contract with the quarry company to take out 1,000 car loads of crushed granite during the two years 1896 and 1897, but not that defendant was then informed of the terms of that contract, and the petition does not state that defendant had any knowl-

edge or information whatever of the proposed contract with Clark & Sons.

This court, per NAPTON, J., has said: "The loss then which forms the criterion of damages, must not only be free from the objection of being speculative and remote, but it must be a loss within the probable contemplation of the parties at the time of the execution of the contract." [Taylor v. Maguire, 12 Mo. loc. cit. 318.]

The proposition that to hold a carrier liable for the loss of prospective profits, even if they are not remote and speculative, he must be informed of the nature and terms of the contract out of which the profits are to arise, is well settled. [Pruitt v. Railroad, 62 Mo. 527; Gray v. Railroad, 54 Mo. App. 666; Horne v. Railroad, L. R. 8 C. P. 131; Harvey v. Railroad, 124 Mass. 421; V. & M. Railroad v. Ragsdale, 46 Miss. 458; M. K. & T. Railroad v. Belcher, 89 Tex. 428.]

In the case at bar how could the carrier have had in contemplation the profits the plaintiff would probably make on his contract with the quarry company when it had only a vague knowledge that a contract of some kind was in contemplation, but of its terms there was no suggestion, or how could it have contemplated the probable profits on the Clark & Sons contract, when the petition does not say that it had any information that such a contract was in existence or in contemplation? The plaintiff's petition contained no statements to authorize evidence on that subject, and the court correctly ruled it out.

There is no necessity for us to pause here to discuss the question of whether or not the profits contemplated in plaintiff's collateral contracts are too speculative or remote to be considered, because even if it be conceded that there was a contract between plaintiff and defendant as claimed, and that defendant was informed of the nature and terms of the collateral contracts and that the profits probably resulting to plaintiff could fairly have been contemplated as a natural

VOL. 156, APRIL TERM, 1900. 337

Steffen v. Miss. Riv. & Bonne Terre Ry. Co.

outcome of the fulfillment by the defendant of its contract, still when the defendant refused to carry out that agreement, the plaintiff had no right to throw up his collateral contracts and magnify his damages.

The plaintiff was not dependent for the performance of his collateral contracts upon the performance by the defendant of its alleged agreement. Defendant as a railroad corporation was bound by law, independent of contract, to carry the plaintiff's freight, and it is not asserted that defendant was not ready and willing to do so. Under the circumstances it was the plaintiff's duty, if he intended to hold the defendant liable for a breach of the contract, to have proceeded to the fulfillment of his collateral engagement, and then have demanded the difference between the amount he would have paid to have his granite carried and the amount it would have cost him if the defendant had lived up to its agreement.

We are not now dealing with a case in which the carrier has refused to carry the plaintiff's goods or has put a prohibitory tariff on their transportation and thereby rendered the performance of his collateral contracts impossible; it is no use, therefore, to say what the law would be in a case of that kind. The breach of contract here charged is in demanding a higher freight rate than that agreed on, that is, in demanding the regular rate allowed by law to be demanded of the public in general, and it is not suggested that that rate was unreasonable or that it rendered the performance of plaintiff's collateral engagements impossible. If the rate demanded detracted from the plaintiff's profits the amount so detracted was the difference between the rates charged and the rates agreed to be charged, and that difference is the measure of the plaintiff's damage. [Douglass v. Stephens, 18 Mo. 362: Waters v. Brown, 44 Mo. 302; Spurlock v. Railroad, 93 Mo. 530; L. N. A. & C. Railroad

v. Flanagan, 113 Ind. 488; V. & M. Railroad v. Ragsdale, *supra*; Cooper v. Young, 22 Ga. 269; Ogden v. Marshall, 8 N. Y. 340; Grund v. Pendergast, 58 Barb. 216; Irvine v. Railroad, 6 L. R. Ire. 55; Hutchinson on Carriers (2 Ed.), sec. 774.] The trial court admitted the plaintiff's evidence showing the lease of the quarry, and its terms, and ruled that if plaintiff had suffered loss on account of his liability for royalties under the lease that loss might be estimated in his damages, but excluded the Clark contract, and evidence to show what profits could have been made in the business.

The exclusion of that evidence constitutes the foundation of all that appellant complains of on the trial. We find no error in the ruling of the trial court and the judgment is affirmed.

All concur.