Dunne & Grace v. Railroad.

DUNNE & GRACE, Respondents, v. ST. LOUIS & SOUTHWESTERN RAILWAY COMPANY, Appellant.

**St. Louis Court of Appeals, July 2, 1912.**

1. **DAMAGES: Loss of Profits: Consequential Damages.** Damages arising from loss of profits from a sale of goods, by reason of delay in their transportation, are consequential damages.

2. **COMMON CARRIERS: Liability for Consequential Damages: Necessity of Notifying Carrier.** A common carrier undertaking to transport goods is not liable for consequential damages arising from loss of profits from the sale of the goods as advertised, by reason of delay in their transportation, where the shipper does not advise the carrier, at the time the contract of carriage is made, of his intention to transport the goods for the purpose of such sale.

3. ————: **Contract for Less than Established Rate: Interstate Commerce.** A shipper is properly required to pay the full freight rate, established under the Interstate Commerce Law (Act February 4, 1887, Chap. 104, 24 Stat. 379; U. S. Comp. St. 1901, p. 3154), although the carrier has, through mistake, contracted to carry at a lower rate.

4. ————: **Overcharge by Connecting Carrier: Liability of Initial Carrier.** Where plaintiff contracted with defendant railroad company for transportation of a car, to be taken over its line to a certain point and there delivered to a connecting carrier to complete the transportation, and, at destination, the connecting carrier, without having advanced to defendant its charges, collected an excessive amount to cover the freight charges of both, asserting, as to the entire sum, the lien of both, defendant, by reason of the wrongful use by the connecting carrier of the agency which defendant gave it by delivery of the shipment to it without requiring an advancement of the then accrued freight, became liable for the excess collected, although it was retained by the connecting carrier.

Appeal from New Madrid Circuit Court.—*Hon. Henry C. Riley,* Judge.

REVERSED AND REMANDED (*with directions*).

*S. H. West, Roy F. Britton* and *Wammack & Welborn* for appellant.

(1) No recovery can be had for damages for purely speculative or contingent damages or for damages which could not have been reasonably anticipated by defendant. Taylor v. McGuire, 12 Mo. 313; Mining Co. v. Clark, 32 Mo. 309; Steffen v. Railroad, 156 Mo. 336; Connoble v. Clark, 38 Mo. App. 483; Rogan v. Railroad, 51 Mo. App. 665; Gray v. Railway, 54 Mo. App. 666. (2) The plaintiffs were bound to pay the regular tariff freight rates, regardless of the rate which was named in the bill of lading. Railroad v. Hefley, 158 U. S. 98; Railroad v. Mugg, 202 U. S. 242; Packing Co. v. United States, 153 Fed. Rep. 1; Railroad v. Oil Co., 204 U. S. 426; Sutton v. Railroad, 140 S. W. 76; Glass Co. v. Railroad, 136 S. W. 757. (3) The defendant is not liable for any overcharge of freight made by the Illinois Central R. R.

*W. A. Anderson* for respondent.

NORTONI, J.—This is a suit for damages alleged to have accrued on account of defendant's breach of its obligation to transport plaintiffs' goods within a reasonable time and to recover an excessive freight charge wrongfully exacted. Plaintiffs recovered and defendant prosecutes the appeal.

The suit originated before a justice of the peace and found its way by appeal into the circuit court where it was tried without a jury. The complaint sets forth, and the evidence tends to prove, that plaintiffs, copartners, owned and operated a business at Wickliffe, Kentucky, where they retailed wagons, buggies, etc. They had recently purchased a second-hand stock of wagons and buggies and had been closing them out at Paragould, Arkansas, but desired to ship the remnant of such stock from that point to their

store at Wickliffe, Kentucky, for the purpose of making a sale during the session of the circuit court at that place. Plaintiffs applied to defendant's freight agent at Paragould, Arkansas, for a through rate from that point to Wickliffe, Kentucky, for a car of wagons and buggies, and was advised that defendant would transport the same at thirty-five cents per hundredweight to destination. Upon this representation, plaintiffs made the shipment at the rate mentioned, but it involved the passing of the car over two railroads, as defendant's line did not enter Wickliffe, Kentucky. The contract of shipment contemplated that the car laden with the goods should be transported by defendant to Cairo, Illinois, and there delivered to the Illinois Central Railroad Company, to complete the transportation to Wickliffe. The distance between Paragould, Arkansas, and Wickliffe, Kentucky, via. Cairo, Illinois, is about 110 miles, and the transportation should have been completed within some two or three days. The car was shipped from Paragould on April 8, but was delayed in transit, so that it did not reach Wickliffe, Kentucky until the 19th of that month. As before said, plaintiffs had advertised a sale of wagons and buggies at Wickliffe, Kentucky, during the session of the circuit court, during which, it is said, a considerable number of prospective buyers assemble there. Because of the delay in the transportation, the wagons and buggies did not arrive in time for the sale intended, and plaintiffs therefore lost the profits of the sale, at least for the time being. The loss of the contemplated profits on this proposed sale are the damages sued for as a result of defendant's failure to observe its obligation to transport the goods within a reasonable time. Indeed, Mr. Dunne, one of the plaintiff partners, and the only one who testified, specifically disclaims any damages touching this matter save the loss of profits above mentioned.

The court refused to declare that such damages were too remote and conjectural for recovery on the proof made, and gave judgment for plaintiffs to the contrary. In this, an erroneous conception of the law prevailed, for the evidence is conclusive that plaintiffs did not inform defendant at the time the contract of shipment was entered into, nor at any other time, for that matter, that they were shipping the goods with the purpose of disposing of them at such sale or for any particular purpose whatever. It may be that such contemplated profits were not so remote and conjectural as to render them incapable of ascertainment and recovery had the purpose of the shipment been disclosed when contracted. It is unnecessary to determine this question, for it is not made in the case, as there is naught in the evidence tending to prove that such consequential damages were within the contemplation of the parties at the time the shipment was undertaken. Even if the damages here sued for and recovered are not remote and speculative in the eye of the law in all cases, they are certainly consequential in character. This being true, the rule is well established that a carrier may not be required to respond on the breach of its obligation to transport, within a reasonable time, for such consequential damages, as the loss of profits which depend upon collateral acts or sales, unless he is informed of the shipper's intention to transport the goods for the particular purpose, at the time the contract of shipment is entered into. Unless such purpose is communicated by the shipper to the carrier at the time of entering into the contract, the matter of consequential damages which may arise from the breach is to be regarded as not within the contemplation of the parties and, therefore, not recoverable in any event. Though the rule is that announced in Hadley v. Baxendale, touching the breach of a contract, it is said to find appropriate application in those cases where a common carrier is sued for the

breach of its common law obligation to deliver goods within a reasonable time, as will appear by reference to the following authorities: See Rogan v. Wabash Ry. Co., 51 Mo. App. 665; Steffen v. Mississippi River, etc. R. Co., 156 Mo. 322, 336, 56 S. W. 1125; Gray v. St. L., I. M. & So. Ry. Co., 54 Mo. App. 666.

In the complaint plaintiffs lay a claim of eighty dollars for damages on account of delay in the shipment, and by its judgment the court awarded them the full amount claimed on that score. It is entirely clear that such consequential damages may not be recovered on the proof made, and the court erred in giving judgment for plaintiffs thereon.

The other item of damages sued for relates to an alleged overcharge of twenty-two dollars for the freight, and the court gave judgment for plaintiffs for the full amount claimed touching this matter as well. It appears that defendant contracted with plaintiffs to transport the car of wagons and buggies from Paragould, Arkansas, to Wickliffe, Kentucky, via. Cairo, Illinois, over its own line and the Illinois Central at thirty-five cents per hundredweight. At such rate, the total freight justly payable at Wickliffe, Kentucky, was seventy dollars. When the goods arrived at destination, the Illinois Central Railroad Company refused to deliver the same in accordance with the contract and, instead, exacted a payment of ninety-two dollars freight thereon for the through shipment. It appears defendant's agent made a mistake in computing the freight rate and entering into the contract as above mentioned, for no through rate whatever was provided between the point of shipment and destination. The shipment is interstate in character and, of course, falls within the purview of the Interstate Commerce Law. The case concedes that the rate shown in the tariff published and filed with the Interstate Commerce Commission on such shipment was thirty cents per hundredweight from Paragould, Arkansas to

Cairo, Illinois, and ten cents per hundredweight from Cairo, Illinois, over the Illinois Central to Wyckliffe, Kentucky, or a total of forty cents per hundredweight for the through rate. It has been several times decided that such rates duly published and filed with and approved by the Interstate Commerce Commission are conclusive on the parties and not the subject of contract between them. And, indeed, though it appears the carrier has contracted to transport the goods for a lesser rate, through mistake or otherwise, the shipper may be required to pay an additional sum in accordance with the rate duly established under the Interstate Commerce Law before he is entitled to the possession of his goods. One object and purpose of the Interstate Commerce Law is to prevent discriminations and undue preferences, and were the rule of decision otherwise, no doubt many evasions of the act would be accomplished through alleged mistakes in rates. Under any circumstances, the rate of freight on this shipment was not the subject of contract between the parties, and plaintiffs were justly required to pay the full forty cents per hundredweight, or a sum total of eighty-three dollars and twenty cents for the through shipment, notwithstanding the agreement with defendant's freight agent to the contrary. See the following authorities in point: Sutton v. St. L. & S. F. R. Co., 159 Mo. App. 685, 140 S. W. 76; Gerber v. Wabash R. Co., 63 Mo. App. 145; Texas & Pacific R. Co. v. Mugg, 202 U. S. 242. It therefore appears that though plaintiffs contracted with defendant for a through shipment at thirty-five cents per hundredweight, or a sum total of seventy dollars, it was entirely proper, in view of the interstate character of the shipment, to require them to pay eighty-three dollars and twenty cents before the goods were delivered at Wickliffe, and in no view of the case may they recover the difference between the seventy dollars, freight contracted, and the eighty-three dollars and twenty

cents, required to be paid because of the law fixing the charge.

But the agent of the Illinois Central Railroad Company at Wickliffe, Kentucky, exacted from plaintiffs ninety-two dollars as a condition to surrendering the goods. From this it appears that plaintiffs were required to pay twenty-two dollars in excess of the contract rate and eight dollars and eighty cents in excess of the rate provided by law. The court awarded plaintiffs a recovery of twenty-two dollars on this item as if the contract touching the same were a valid one and such amount was unlawfully exacted. Obviously this was error under the rule of decision above referred to, but it is not to be doubted that plaintiffs are entitled to recover eight dollars and eighty cents, the amount collected in excess of the tariff rate duly provided. But defendant argues that it may not be required to repay even this sum to plaintiffs for the reason it was unjustly exacted by the Illinois Central Railroad Company and retained by that company. It is said this defendant was wholly unconcerned with such unlawful exaction and has received none of its benefits. We are not impressed with this argument in the least, for whether the Illinois Central retained the excess charged or not, it acted in part as the agent of this defendant in exacting its payment from the plaintiffs. The Illinois Central as connecting carrier had not advanced the accrued freight charges to defendant company, the initial carrier, at the time of this collection and, therefore, was not asserting the right of its lien alone when demand for the same was made. On the contrary, the Illinois Central collected the ninety-two dollars at Wickliffe, Kentucky, in one sum to cover the freight charge for both defendant, the initial carrier, and its own account and, as to the entire sum, asserted the lien of both carriers. In such circumstances, the Illinois Central Railroad Company exercised an agency for defendant, the initial carrier,

in and about collecting the freight, for with defend-
ant's implied consent, it utilized defendant's lien to
the end of making such collection. [See Illinois Cen-
tral R. Co. v. Brookhaven Machine Co., 71 Miss. 663,
673, 674, 675; 2 Hutchinson on Carriers (3 Ed.), sec.
867.] Because of such agency which defendant com-
pany authorized by delivering the shipment to the
Illinois Central without requiring an advancement of
the freight then accrued to it, responsibility is entailed
against defendant to the amount of eight dollars and
eighty cents for the wrongful conduct of its agent
even though the agent retained such excess.

The judgment should, therefore, be reversed and
the cause remanded with directions to the circuit court
to enter judgment for plaintiffs against defendant for
the amount of eight dollars and eighty cents, together
with six per cent interest thereon from the date plain-
tiffs were coerced into pay the same. It is so ordered.
*Reynolds, P. J.,* and *Caulfield, J.,* concur.