SUNDERLAND BROTHERS COMPANY, Appellant, v. BALTIMORE & OHIO SOUTHWESTERN RAILROAD COMPANY, Respondent.

St. Louis Court of Appeals, December 30, 1916.

1. **COMMON CARRIERS:** Interstate Commerce: Illegality of Freight Rate: Jurisdiction of State Courts. A complaint based upon the illegality or impropriety of the published freight rate for an interstate shipment is not within the jurisdiction of the State courts.

2. ———: ———: Excessive Charges: Jurisdiction of State Courts. Where a railroad company wrongfully exacts a freight charge for a shipment, in excess of the rate it advertises in its tariff sheets, a cause of action by the shipper to recover the excess is within the jurisdiction of the State courts, although the shipment is an interstate one.

3. ———: ———: ———: **Long and Short Haul Clause: Tariff Construed.** Where the tariff sheet of a railroad company named freight rates from two points on its line to a common destination, within the same State, the higher rate being charged for the shorter haul, the further clause appearing in the sheet, that "on interstate traffic a higher rate must not be charged for a shorter than a longer distance over the same line, the shorter being entirely included within the longer distance," did not affect the named rates, and was not an offer to transport a shipment consigned to a point in another State, from the farther point to such common destination, at the same rate charged from the point nearer the common destination, so as to authorize a recovery by a shipper for the difference between the two rates.

4. ———: ———: **Laws to be Read into Tariff Sheets.** The pertinent provisions of the Interstate Commerce Act are to be read into tariff sheets filed by carriers, relating to interstate shipments, and the State laws touching the matter become an integral part of such sheets, if applied to intrastate shipments.

5. ———: ———: **Contract for Less than Established Rate.** A carrier may not, under the law, by special contract with a shipper or otherwise, bind itself to deviate from the established rate for an interstate shipment, duly promulgated and in effect.

Appeal from St. Louis City Circuit Court.—*Hon. Wilson A. Taylor,* Judge.

AFFIRMED.

*Richard A. Jones* and *McGilton, Gaines & Smith* for appellant.

*Fordyce, Holliday & White* and *Kramer, Kramer & Campbell* for respondent; *Edward Barton* of counsel.

ALLEN, J.—This is an action, instituted in the circuit court of the city of St. Louis, to recover certain alleged "overcharges" of freight on coal shipped by plaintiff over defendant's line of railway. The cause, being one for compulsory reference, was referred to Edgar R. Rombauer, Esq., of the St. Louis Bar, to try all of the issues. The referee duly filed his report, stating his findings of fact and conclusions of law, and recommending judgment for defendant. To this report plaintiff filed exceptions, which were overruled.

The court thereupon entered judgment for defendant, in accordance with the recommendation of the referee, and plaintiff appealed to this court.

Plaintiff is a corporation of the State of Nebraska. Its corporate name was originally "Omaha Coal, Coke & Lime Company," but this was subsequently changed to "Sunderland Brothers Company." The defendant is a corporation of the State of Ohio, doing business as a common carrier in various States, and engaged in operating its railroad in the State of Illinois through the towns of Breese and Trenton, to East St. Louis, all being points within the last mentioned State. During 1900 and 1901 plaintiff made certain shipments of coal over defendant's railroad from Trenton to East St. Louis, destined for points beyond the State of Illinois, to-wit, points in States lying to the northwest thereof. Breese, Illinois, is a point on defendant's line of railway approximately eight miles east of Trenton, the latter being thirty-six miles east of East St. Louis. Consequently shipments from Trenton to East St. Louis were made over the same line of defendant's road, and in the same direction, as shipments from Breese to East St. Louis; that from Breese being the longer haul.

During the period in which plaintiff made the shipments with which we are now concerned, the defendant had in effect a tariff from Trenton to East St. Louis, shown by a certain tariff sheet, in evidence, issued by defendant on January 1, 1900. We deem it unnecessary to set out this tariff sheet in full. It applied on coal, in carload lots, "minimum 20 tons." It sets out the names of a number of stations on defendant's line of railway east of East St. Louis, and designates the freight rates on coal (carloads, minimum 20 tons) from said points to East St. Louis. The rate appearing therein on coal from Trenton to East St. Louis is 40c per ton, while the rate named on coal from Breese to East St. Louis is 35c per ton. Following the names of the various stations, with the respective rates on coal as aforesaid, the tariff sheet contains the words: "Subject to rules

of classification." Then follows this clause, viz: "On interstate traffic a higher rate must not be charged for a shorter than a longer distance over the same line in the same direction, the shorter being entirely included within the longer distance."

Other tariff sheets of defendant were introduced in evidence by plaintiff; but as the case was tried before the referee, as shown by his report, plaintiff ultimately confined its claim to shipments made during the time when the above mentioned tariff sheet was in effect. The referee found that during that period plaintiff shipped over defendant's line of railway from Trenton to East St. Louis, 14,332.26 tons of coal in carload lots, each car containing a minimum of twenty tons thereof, the points of ultimate destination of such shipments being beyond the State of Illinois. On each such shipment the defendant charged the sum of forty cents per ton freight, which was paid by plaintiff, i. e., the carrier or carriers that made delivery at the points of ultimate destination collected the freight from plaintiff vendees, who deducted the same in remitting to plaintiff. Plaintiff's claim, now in controversy, is, therefore, for the recovery of five cents per ton alleged excess freight collected by defendant on these shipments, amounting to $716.61; plaintiff contending that on such shipments defendant could lawfully charge and receive only 35c per ton.

It is unnecessary to here notice the pleadings. The learned referee proceeded upon the theory that plaintiff's complaint was not founded upon the assumption or contention that defendant's rates, published in its aforesaid tariff sheet, were illegal or improper, but that plaintiff asserted a right of recovery upon the ground "that it contracted with defendant on a published rate, for this carriage, of 35c, and that defendant, in violation of its contract obligations to carry for 35 cents, exacted a charge of forty cents for the service." And the referee held that in any event, as the shipment was an interstate one, any complaint based upon the illegality or impropriety of the published rate

would not be within the jurisdiction of the trial court. This ruling we regard as entirely sound; and hence we shall not assume the right to pass upon any question —whether apparently included within the petition or otherwise—touching the reasonableness of the rate charged and collected, or the legality of such rate under the Interstate Commerce Act. The rate on coal of 40c per ton from Trenton to East St. Louis, appearing on the same tariff sheet with a rate on coal of 35c per ton for the longer haul, in the same direction, from Breese to East St. Louis, when applied to an interstate shipment, is apparently in contravention of section 4 of the Interstate Commerce Act of 1887 (24 Stat. L. 380; Vol. III, Fed. Stat. Ann., p. 823). But the prohibition of that section is directed against "the transportation of passengers or of like kind of property, under substantially similar circumstances and conditions, for a shorter than for a longer distance over the same line, in the same direction, the shorter being included within the longer distance." There is evidence to the effect that the coal mined at Trenton, to which the rate of forty cents per ton apparently applied, was a comparatively high grade coal, used for domestic purposes and sold over an extensive territory, whereas the coal mined at and shipped from Breese was of a lower grade, used principally as "steam coal" and generally "sold locally along the line (of defendant's railway) and in St. Louis;" and that, while the price of each at the mine varied from time to time, the Trenton coal was worth from fifty cents to seventy-five cents more per ton than the Breese coal. But whether the difference in the character and value of the two coals, or other circumstances and conditions present, were such as to justify a classification placing a higher rate on Trenton coal from Trenton to East St. Louis and on Breese coal from Breese to East St. Louis, in interstate shipments, is a matter with which we have here no concern. It is quite clear, as stated by the referee, that, if any question of this character can be said to have been originally presented in the case, the lower court had no

jurisdiction to determine it. [See Texas & Pacific Railway Co. v. Abilene Cotton Oil Co., 204 U. S. 426; Robinson v. B. & O. Railroad Co., 222 U. S. 506.] Plaintiff contends, however, that by the tariff sheet aforesaid the defendant advertised and offered to transport coal from Trenton to East St. Louis, on interstate shipments, at the rate of 35c per ton; whereas, upon interstate shipments tendered by plaintiff and accepted by defendant, while such tariff sheet was in force and effect, defendant, in violation of its contract obligations in the premises, wrongfully exacted a freight charge of 40c per ton for such carriage. The cause of action thus counted upon is undoubtedly within the jurisdiction of our State courts. [See Pennsylvania Railroad Co. v. Puritan Coal Mining Co., 237 U. S. 121; Illinois Central Railroad Company v. Mulberry Hill Company, 238 U. S. 275.]

The question, therefore, with which we are concerned is whether defendant, through its published tariff sheet, when construed as a whole, should be held to have offered to carry coal from Trenton to East St. Louis at the rate of 35c per ton, in interstate traffic. The tariff sheet definitely specifies a rate of 40c per ton from Trenton to East St. Louis. It is not stated whether this is to apply to interstate or intrastate shipments, or both. However, the tariff sheet recites that "on interstate traffic a higher rate must not be charged for a shorter than a longer distance over the same line in the same direction, the shorter being entirely included within the longer distance;" and inasmuch as the rate named from Breese to East St. Louis is 35c, plaintiff argues that when the tariff sheet as a whole is construed it must be taken to mean that on interstate shipments the rate from Trenton to East St. Louis is to be 35c. It is pointed out that only in this one instance does the tariff sheet, in the column of rates, specify a greater rate for a shorter than for a longer distance; and it is insisted that by inserting the clause above quoted, it was plainly indicated and intended that on interstate shipments from Trenton to East St.

Louis the specified rate from Breese to East St. Louis, viz., 35c per ton, would apply.

In this connection it is to be observed that a statute of the State of Illinois, shown in evidence, and which was in force at the time with which we are here concerned, makes it an offense for a railroad corporation to charge, collect or receive "for the transportation of any passenger, or freight of any description, . . . the same or a greater amount of toll or compensation than is at the same time charged, collected or received for the transportation in the same direction of any passenger or like quantity of freight of the same class, over a greater distance of the same railroad." [See 3 Star & Curtis Ill. Stat. Ann., sec. 166, et seq., chap. 114, p. 3309 et seq.] Appellant contends that the scope of this statute is considerably different from that of the corresponding provisions of the Interstate Commerce Act. But be this as it may, the tariff sheet above mentioned, specifying a 40c rate from Trenton to East St. Louis and at the same time a 35c rate from Breese to East St. Louis, if intended to apply to intrastate shipments, is apparently in contravention of this statute; just as it appears prima facie to be in contravention of the Interstate Commerce Act, if applicable to interstate shipments. And in this connection the referee pertinently says:

"Whether such apparent disregard of the law is justified or not by the difference in the grades of coal, and whether the defendant, if it had the right to make a different classification, did or did not make such classification, is not now the question. The sole question is did the defendant, by this tariff sheet, offer to carry plaintiff's coal for interstate shipment for 35 cents a ton, from Trenton to East St. Louis? If such construction is placed upon the tariff sheet, then it would be just as logical in view of the Illinois statute to place a similar construction thereon as to intrastate shipments, a construction that would eliminate the forty cent rate from the tariff sheet altogether."

It is true that the tariff sheet makes no reference to the Illinois statute, while it does contain a clause calling attention, in a general way, to the above mentioned prohibition of the Interstate Commerce Act. But we take it that it matters not that the tariff sheet made reference to the Federal law and not to the State law. Necessarily the pertinent provisions of the former are to be read into the tariff sheet if applied to interstate shipments, and, on the other hand, the State law touching the matter must become an integral part of the tariff sheet if applied to intrastate shipments. What defendant's object was in placing upon the tariff sheet the clause mentioned, referring to the provisions of the Interstate Commerce Act, we cannot say. In our opinion that clause added nothing whatsoever to the tariff sheet. That document plainly specifies a rate of 40c per ton on coal from Trenton to East St. Louis. And this we think cannot be said to have been eliminated or altered by the mere recital therein that on interstate traffic a higher rate must not be charged for a shorter than a longer distance over the same line in the same direction, the shorter being entirely included within the longer distance.

We are therefore of the opinion that the tariff sheet in question cannot be construed as an offer by defendant to transport coal from Trenton to East St. Louis at the rate of 35c per ton. If defendant was not justified under the law in fixing the rate at 40c per ton, as specified, in interstate shipments, the matter is one which cannot be reached in this action.

It is contended that defendant, by certain acts on its part, placed a construction on the tariff sheet such as that for which plaintiff contends, and should now be held to that construction. It is unnecessary to review these matters in detail, as to which there is considerable argument *pro* and *con*. It is sufficient to say that defendant is at any rate correct in the contention that under the law it could not, by special contract with plaintiff or otherwise, bind itself to deviate from the established rate duly promulgated and in effect during

the period mentioned. [See Dunne and Grace v. Railroad, 166 Mo. App. 1. c. 377, and cases cited, 148 S. W. 997.]

It follows that the judgment should be affirmed, and it is so ordered. *Reynolds, P. J.,* and *Thompson, J.,* concur.