WILLIAM J. GRAY, Appellant, v. ST. LOUIS, IRON MOUN-
TAIN AND SOUTHERN RAILWAY COMPANY, Respond-
ent.

St. Louis Court of Appeals, November 7, 1893.

1. **Practice, Appellate:** APPEAL FROM ORDER GRANTING NEW TRIAL.
When an appeal is taken from an order granting a new trial, this
court is not restricted to the reason assigned by the trial court for the
order, but will affirm the ruling of that court, if it finds any of the
grounds assigned in the motion for new trial sufficient.

2. **Common Carriers:** MEASURE OF DAMAGES. Before a common car-
rier can be held for special damages accruing from loss or injury to
goods in transit, it must be shown that such special damages were
contemplated by him and the consignor at the time of the shipment,
and that he, the carrier, had notice of the special circumstances lead-
ing to such damages when the goods were received for transportation.
And *held*, that the information communicated to the carrier in this
case was too general and vague to constitute such notice.

3. ———: ———. *Held*, in the course of discussion, that, in the absence
of stipulations limiting his liability, a carrier who delivers goods in-
jured during transit is responsible for their market value at the point
of destination in the condition in which they were received, less their
market value in the condition in which they were delivered and the
freight rates earned for their carriage; or, in cases of reparable inju-
ries, for all the reasonable costs and expenses incurred in repairing
the injured article, so as to put it in as good condition as when it was
received for shipment, and its rental value during the delay in its use
caused by such repairs.

*Appeal from the St. Louis City Circuit Court.*—HON.
DANIEL DILLON, Judge.

AFFIRMED.

*Ira C. Terry* and *Willis H. Clark*, for appellant.

No error prejudicial to defendant was committed
in the giving or refusal of instructions. *McPherson v.
Railroad*, 97 Mo. 253; *Taylor v. Penquite*, 35 Mo.

App. 389; Redfield on Railways [6 Ed.], sec. 167 and note 1; *Davis v. Railroad*, 89 Mo. 340; *Doan v. Railroad*, 38 Mo. App. 408; *Nave v. Pac. Ex. Co.*, 19 Mo. App. 563; *Witting v. Railroad*, 101 Mo. 631; Sedgwick on Damages, sections 195, 856; Hutchison on Carriers, sec. 773; Schouler on Bailments [2 Ed.], secs. 426, 427; *Railroad v. Ragsdale*, 46 Miss. 458; *Railroad v. Hale*, 83 Ill. 360; *Railroad v. Cobb*, 64 Ill. 128; *Priestley v. Railroad*, 26 Ill. 205; *Railroad v. Railroad*, 71 Pa. St. 350; *Foard v. Railroad*, 78 Am. Dec. 277; *Benton v. Fay*, 64 Ill. 417; *Hydraulic, etc., Co. v. M'Haffie*, 4 Q. B. Div. 670.

*H. S. Priest* and *H. G. Herbel*, for respondent.

BOND, J.—This action is for damages for injury to a steam shovel carried by respondent from St. Louis to Delta, Mo.

The damages prayed for are: (1) For the delay in the prosecution of certain work contracted to be done by appellant, of which it is alleged respondent had knowledge; (2) Loss of the use of said steam shovel and expenses of repair thereof, and expenses of hire of laborers while it was undergoing repairs, and general loss of profits.

The answer of respondent contains a general denial, and a special defense that the injury to the steam shovel was caused by appellant's conduct in loading same at too great a height to clear a tunnel on respondent's line of railway through which it must pass, and misrepresenting this fact to respondent.

The evidence was conflicting as to the height of the Glenn Allen tunnel, where the shipment was injured. Appellant's evidence tending to show that he was informed by the engineer of the respondent that the height of this tunnel was 16 feet and 7 inches above the

rails, and that he informed respondent's freight agent that the shovel, after being loaded, was only 16 feet and 4 inches above the rail. Respondent's evidence tended to show that the appellant had been told by its engineer that the tunnel was only 16 feet and 5 inches above the rail in height, and that he (appellant) thereafter reported that his shovel, when loaded on the cars, was only 16 feet and 1 inch above the rails.

The evidence of the appellant was that he had an agreement with the general freight agent of the respondent for the shipment of the shovel, and received a bill of lading therefor. In reply to a question as to what information he gave the freight agent the appellant replied: "I told him I had got a contract with the Houck road, and wanted to ship it down, and wanted a special rate, and he gave it to me."

There was no dispute that the shovel was injured by colliding with the upper walls of Glenn Allen tunnel, and that it was delivered in a damaged state. The evidence tended to show that the appellant took his shovel to Cape Girardeau, and, having repaired it, then brought it back to Puxeco cut, where it was employed by him in excavating earth for several months; that it became disabled on October 7th, necessitating its being sent to St. Louis, and, after having been there repaired, it was returned and used by appellant until the completion of his work in January, 1890. The work in which the shovel was used was begun under a contract between appellant and the Cape Girardeau & Northwestern Railway Company, made on April 14, 1890, which provided for the payment to the appellant of seven cents per cubic yard for all "dirt" loaded on cars by him and removed by the company. After operating under this contract more than two months, the appellant made a supplemental contract (under which he completed his work) with

the Cape Girardeau & Southwestern Railway Company, whereby said road became bound to remove four hundred yards of dirt per day on such cars as the appellant should place it. Concerning the making of this contract, the appellant states in re-examination: "It came about in this way; I noticed the first contract didn't bind Mr. Houck to take away four hundred yards per day. I was there some days and didn't handle more than forty or fifty yards, or may be a hundred yards or such a matter. I saw I was out of pocket, and I had either to quit work or else they had to put on more cars to take care of and handle the earth."

The time occupied in the first repairs of the shovel at Cape Girardeau on June 21, 1890, was about two or three days. When it was finally repaired in St. Louis on October 7, 1890, a delay of eighteen and one-half days supervened before it was returned. There was evidence tending to show the costs of these repairs and of the prices paid certain laborers, who were idle during these repairs, by appellant; also the profits which he could have earned during these delays, if his shovel had been employed under the two contracts with the Cape Girardeau & Southwestern Railway Company.

Upon the evidence and instructions, the jury found for plaintiff in the sum of $460. A motion for new trial made by the respondent was sustained by the court, which assigned the following reasons for granting the new trial:

"I am of opinion that the instruction given for plaintiff as to the measure of damages is erroneous. It was the purpose of that instruction to tell the jury to award plaintiff, among other things, the value of the use of the machine while undergoing repairs. But the language used, when carefully considered, does not

confine the jury to the value of the use of the machine, but tells the jury to award plaintiff the damages he suffered by being deprived of the use. This left the jury at liberty to adopt their own view of what constituted plaintiff's loss arising from not being able to use the machine—in fact it gave them no rule at all to guide them in determining what were the elements· constituting his legal damages.''

The part of the instruction thus referred to stated the rule as to the damages as follows, to-wit:

''*First.* In such sum as they find from the evidence it reasonably cost plaintiff to put said shovel in as good condition as it was at the time defendant received it, and,

''*Second.* If they find that plaintiff had entered upon a contract to do work, and was shipping said shovel to Delta for that purpose, and that defendant's agents knew that plaintiff was shipping said shovel to Delta to be used upon such work, then they will find, as additional damage, the sum plaintiff lost by being deprived of the use of said shovel for the time it was idle while being repaired.''

From this action of the court, appellant brings the case to this court under the act of 1891, authorizing an appeal from an order granting a new trial. Session Acts, 1891, page 70.

While the only error now assigned is the action of the trial court in granting the new trial for the reason stated by him in making that order, yet we are not confined to a consideration of that ground alone, but have the right to examine all the grounds stated in respondent's motion for new trial in the light of the record before us; and, if we find that the trial judge should have granted the new trial for any of these reasons other than that given by him, it is our duty to affirm his ruling.

*Lovell v. Davis,* 52 Mo. App. 342. We think, how-ever, in this case that the reason given by the trial judge was sufficient to authorize the order for new trial. It is obvious from the language of the learned circuit judge in awarding the new trial in this case that, upon further advisement, he had become convinced that the loss of profits averred in plaintiff's petition are not recoverable in this action under the undisputed facts. The evidence of the appellant was uncontradicted that he never gave the agent of the carrier the essential particulars of the contract which he claimed to have with the Cape Girardeau & Southwestern Railway Company, nor any other special circumstances connected therewith; on the contrary he merely stated he "had got a contract," and wanted to ship his shovel, and wanted a reduced freight rate, which was allowed him. Before a carrier can be held for special damages accruing from loss or injury to the goods, it must be shown that such special damages were contemplated by the consignor and carrier at the time of the shipment, and that the carrier had notice of the "special circumstances" leading to such damages when the goods were received for transportation. Whittaker's Smith on Negligence, 288; Beach on Railways, section 948; Deering on Negligence, section 122; *Prewitt v. Railroad,* 62 Mo. 543. In the case at bar there was no information to the carrier of the terms, nature or extent of an existing contract had by the shipper, to which the shovel was to be applied after its delivery, except a vague and general statement made by the consignor that he "had got a contract" and wanted to send his shovel to Delta, Mo. This gave no basis of calculation as to the profits or losses that might arise. Again, the evidence shows that the contract under which the shovel was used was one that yielded no profit, and that the appellant on that account made a

new one about August 14th, 1890, under which he completed his work. There are, therefore, two reasons of fact why the appellant is not entitled to recover for loss of profits in this case: (1) The first contract was abandoned as unprofitable. (2) The succeeding contract (of which the carrier had no notice) was completed and appellant presumably enjoyed its profits. What appellant is entitled to recover in the present action is dependent on the rules governing the general liability of a carrier for goods. In the absence of stipulations limiting their liability, carriers who deliver goods injured during transit are responsible for their market value (in the condition they were received for shipment) at the point of destination, less their market value (in the condition in which they were delivered) and the freight rates earned for their carriage; or, in cases of reparable injuries, for all the reasonable costs and expenses necessarily incurred in repairing the injured article so as to put it in as good condition as when it was received for shipment, including also its rental value during the delay in its use caused by such repairs. Hutchinson on Carriers, section 776; *Priestly v. Railroad*, 26 Ill. 205. On the next trial of this cause, the evidence as to damages should be confined to these limits. As this cause must be retried, we think it is proper to notice the point made by the respondent as to the refusal of its instruction, predicated on the alleged misrepresentation of the appellant as to the clearance height of the shovel after being loaded on the car. The fact as to such misrepresentations was one of the *issues* in the case, and there was some evidence relevant to this issue in the testimony of witness Herring. The court, therefore, erred in refusing the instruction in question; in other respects the case seems to have been correctly tried.

The result is that the ruling of the trial court was proper in awarding a new trial for error in the instructions given, whereby the jury were told to consider other elements of damage than those herein held proper. The judgment of the trial court in awarding a new trial is therefore affirmed, and the cause remanded for such new trial. All the judges concur.