# Baxley v. Tallassee & Montgomery R. R. Company.

*Action against Railroad Company to recover Damages for Breach of Contract.*

1. *Construction of contract with railroad company; when not shown to be unilateral.*—Where a railroad company enters into a contract, in which it agrees to transport between points on its road, cross-ties at a certain rate per car, and it is provided therein that the other party to the contract was

[Baxley v. Tallassee & Montgomery R. R. Company.]

to load the cars, and have weekly inspections and shipments, and it was further stipulated that there was to be a delivery of a certain number of cars on or before a specified date, such contract is not unilateral, but mutual and binding between the parties.

2. *Action for breach of contract; measure of damages; admissibility of evidence.*—In an action against a railroad company to recover damages for the breach of a contract wherein the defendant agreed to furnish to the plaintiff a certain number of cars within a specified time, upon which the plaintiff was to load cross-ties, and the defendant was to haul them from the place of loading to a designated point on its road, at a fixed rate, if it is shown that, after the making of such a contract, the plaintiff entered into another contract with a railroad company, connecting with the defendant, by which he was to supply the latter railroad company with cross-ties, the measure of damages for the breach by the defendant of the contract, by failing to furnish the cars to the plaintiff, as stipulated, is the profit he would have made by carrying out his contract with the railroad company, to which he had agreed to furnish ties had he not been prevented from doing so by defendant's failure to transport ties for him, in accordance with the contract sued on; and, in such action, in order to show the damages recoverable, it is competent for the plaintiff to prove the difference oetween the costs of getting out and delivering the cross-ties, including the rate of freight agreed on, and the price he was to receive for them from the railroad company.

APPEAL from the Circuit Court of Macon.

Tried before the Hon. JAMES E. COBB, Special Judge.

This action was brought by the appellant, John H. Baxley, against the appellee, The Tallassee & Montgomery Railroad Company, to recover damages for the breach of an alleged contract entered into between the plaintiff and the defendant, in which the latter agreed to furnish a certain number of cars to the plaintiff, to be loaded with cross ties and railroad timber, and to haul said cars from Tallassee to Millstead (point on the defendant's road), for the sum of five dollars per car. To the complaint originally filed the defendant demurred, upon the ground that it was uncertain and indefinite in its averments; and this demurrer was sustained.

The third count of the complain, as amended, averred that the defendant was a railroad company, owning and operating a railroad between Tallassee and Millstead, the latter station being the junction of said railroad with the Western Railway of Alabama. It was averred in said count that plaintiff entered into a contract with the defendant "by which contract the defendant agreed to furnish to plaintiff three hundred flat cars, or over, to be loaded by plaintiff at Tallassee, Alabama, with railroad timber, and to haul said cars from Tallassee to Millstead for the sum of five dollars per car." It was then alleged in the count, that by reason of said contract, the plaintiff entered into a contract with the Western Railway of Alabama to deliver it free on board cars, at Millstead, the junction of above railroads, 25,000 cross ties, and a large quantity of other railroad timber; that, notwithstanding said contract, the defendant only furnished a few cars, and wholly failed to perform said contract, by reason of which breach, the plaintiff was damaged to the amount of $1,500, which was the amount claimed. The demurrers to this count of the complaint, upon the ground of indefiniteness and uncertainty were overruled; and there was also demurrer to this count of the complaint, on the ground that defendant failed to deliver timber therein mentioned. This demurrer was also overruled. The defendant interposed plea of general issue, and several special pleas in which it set up that the contract sued on was uncertain and indefinite, and was unilateral, and not binding upon the defendant.

Upon the trial of the case the plaintiff, as a witness in his own behalf, testified that pending negotiations for supplying cross ties, and other timber, to the Western Railway of Alabama he sought to get a rate from the defendant company for transporting the cross ties, which he got out at Tallassee, from Tallassee to Millstead, which was the junction of the defendant road with the Western Railway of Alabama, and at which place he would deliver said cross ties and timber to the Western Railway of Alabama; that after some effort there was an agreement entered into by

him and Mr. W. H. Micou, secretary and treasurer of defendant company, which agreement was evidenced by a letter written by Mr. Micou to Mr. R. E. Lutz, traffic manager of the defendant company. This letter is copied in the opinion. The plaintiff further testified that after entering into this contract with the defendant company he closed a contract with the Western Railway of Alabama to supply them with cross ties, to-wit, 25,000, and a large quantity of other railroad timber; that after such contract was entered into with the Western Railway of Alabama, the defendant railroad company furnished the plaintiff 38 cars upon which he loaded cross ties, each car carrying about 225 ties; that these cross ties were loaded upon the 38 cars, were carried by the defendant company to Millstead, and the plaintiff paid the defendant the freight charges thereon at the rate of five dollars per car, according to the terms of said contract; that after supplying these 38 cars the defendant failed and refused to furnish any other cars to the plaintiff for the purpose of having them loaded with cross ties. The plaintiff further testified that as a result of defendant's failure and refusal to supply cars, according to its contract, it was necessary for him to haul, through the country, a quantity of ties from Millstead to a station on the Western Railway, and that it finally became necessary for him to cancel the contract with the Western Railway of Alabama. Other witnesses were introduced by plaintiff whose testimony corroborated the plaintiff's testimony.

During the examination of the plaintiff, as a witness, he was asked the following questions: "What did it cost him to deliver a cross tie at the loading point at Tallassee, under the contract?" "What did it cost him to deliver piling and switch ties at the loading point at Tallassee?" "What did it cost him to deliver cross ties at Millstead, under his contract?" "What did it cost him to deliver piling and switch ties at Millstead, under his contract?" The defendant separately and severally objected to each of these questions, on the ground that it called for irrevelant and immaterial evidence. The court sustained each

of the objections and to each of these rulings the plaintiff severally excepted. Upon the cross examination of the plaintiff he was asked by the defendant the following question: "Did you not state to Mr. Herring, at one time, that the reason you did not carry out your contract to furnish ties, according to contract with the Western Railway was that you did not have the funds?" The plaintiff objected to this question, on the ground that it called for irrelevant evidence, but the court overruled this objection and the plaintiff duly excepted. Upon the witness answering that he did not make such statement, he was asked against the objection and exception of the plaintiff: "If the Western Railway of Alabama did not agree to furnish him with cars?" To this question he answered: "No." Plaintiff was then asked the following question: "Didn't you know that the Tallassee & Montgomery Railroad Company did not have but one flat car?" The plaintiff objected to this question on the ground that it called for irrelevant and immaterial evidence, and duly excepted to the court overruling his objection. The witness answered: "It did not." During the further cross examination of the plaintiff, as a witness, he was asked the following question: "Was it not a fact that you had to turn your contract with the Western Railway over to Vandiver & Company to pay them what you owed them?" The plaintiff objected to this question, on the ground that it called for irrelevant and immaterial evidence, and duly excepted to the court overruling his objection. The witness answered: "It was not a fact," but he had to turn over the contract to Vandiver in order to get the Western Railway to pay the balance due him.

After the plaintiff had introduced all of his evidence, the presiding judge, *ex mero motu*, remarked that there was no conflict in the evidence; that the only question in the case was one of damages, and that it was the duty of the court to show whether there was a contract shown by the evidence upon which the plaintiff would be entitled to recover, and that he would hold that the plaintiff had not shown such a contract. After

this remark the defendant without introducing further evidence, requested the court to give to the jury the general affirmative charge in its behalf. The court gave this charge as requested, and to the giving thereof the plaintiff duly excepted. There were verdict and judgment for the defendant. The plaintiff appeals and assigns as error the several rulings of the trial court to which exceptions were reserved.

OSCAR S. LEWIS, for appellant.—The court erred in its construction of the contract. All contracts must be construed in the light of surrounding circumstances, and in its construction the court must place itself in the place of the contracting parties at the time of its execution, and look at the occasion that gave rise to it, to the relative position of the parties and their obvious design as to the object to be accomplished.—*H. A. & B. R. R. Co. v. Birmingham R. R. Co.*, 117 Ala. 511; *Pollard v. Maddox*, 28 Ala. 320; *Williams v. Glover*, 66 Ala. 189; *Tenn. & Coosa R. R. Co., v. East Ala. R. R. Co.*, 73 Ala. 426.

The plaintiff's damages in this case is the difference between the cost of the cross ties, switch ties and piling delivered to the Western Railway, and the price he was to get for the same delivered, or, profit he would have made had he been able to carry out the contract with the Western Railway of Alabama.—*Bonifay v. Hassell*, 100 Ala. 269; *Griffith v. Ogletree*, 114 Ala. 34; *Watson v. Kirby*, 112 Ala. 436; *Danforth & Armstrong v. Railroad Co.*, 112 Ala. 80.

GEO. P. HARRISON, *contra.*—The contract in this case was without mutuality. There was nothing imposing or obligatory upon plaintiff; the contract was unilateral. It is indispensable to the validity of a contract that it should be mutually obligatory upon the parties.—*R. R. Co. v. Dane*, 43 N. Y. 240; *Comer v. Bankhead*, 70 Ala. 136; 1 Brickell's Digest, 376; *Branch Bank v. Steele*, 10 Ala. 916.

When the carrier refuses to receive or to carry goods properly tendered for transportation, whether

it thereby merely violates its common law duty or also breaks a special contract, the measure of damages recoverable by the shipper is the difference between the market value of the goods at the point to which they were destined at the time they would have arrived there had the carrier discharged its duty, and the value of goods of the same kind and quality at the point of shipment at that time, together with interest and less the cost of transportation.—5 Am. & Eng. Ency. of Law (2d ed.), 388; Mayne on Damages, 395; 2 Am. & Eng. Ency. of Law, 209.

McCLELLAN, C. J.—The agreement counted on in the third count of the complaint is supported by a letter written by the secretary of the Tallassee & Montgomery Railroad Co., the defendant, to Lutz, defendant's traffic manager, and there is no variance between the agreement as laid in that count and the agreement supported by this evidence, nor is there other evidence in the case going to show a different agreement. That letter is as follows: "Montgomery, Ala., May 20—1897; Mr. R. E. Lutz, T. M., Dear Sir:—I have agreed with Mr. Baxley to make a rate of $5 per car for ties, Tallassee to Milstead. Car to contain not over 225 ties each. Mr. Baxley to load cars and to have weekly inspections and shipments. This rate does not apply to piling unless it can be shown that same can make bridge curves safely without damage to this company's property. Please have rate put into effect. This contract to apply to delivery of three hundred cars or over on or before 1st of July, 1898. Yours truly, (Signed) W. H. Micou, Secretary." All the oral testimony adduced in the case on this point went in support of the agreement stated in this letter. The trial court was of the opinion that this agreement was unilateral and not mutual, that it did not import an obligation on Baxley, the plaintiff, to take, use and freight the cars which the defendant thus undertook to supply at Tallassee for the transportation of railroad ties for the plaintiff to Milstead, and, hence, that the agreement on the part of defendant was without consideration and void; and upon this theory gave the affirmative

charge for the defendant. We think this was error.
The letter of Micou to Lutz and other evidence in the
case at least tended to show an agreement by Baxley
to supply timber and load three hundred cars to be
furnished him for that purpose at Tallassee for trans-
portation by defendant thence to Milstead within a
specified time, and that he would load cars, have in-
spection and make shipments weekly during the period
named. There can in our opinion be no sort of doubt
that had the defendant supplied the cars and Baxley
had failed to load them with ties for transportation
and refused to pay the charges stipulated for trans-
portation, he would have violated his agreement and
been answerable in damages to the railroad company
for such breach. The obligation to load the cars and
to have weekly inspections and shipments thus im-
posed on Baxley imparted mutuality to the contract and
supplied a valuable consideration for the undertaking
of the defendant. In the view we thus take of the
case it is wholly unlike that of *The Chicago & Great
Eastern R'y Co. v. Dane,* 43 N. Y. 240, relied on for
appellee. In that case there was no obligation as-
sumed by the party having shipments to be made to
make them by the defendant company, but only an
agreement to carry freights for the plaintiff at a speci-
fied rate if the latter should elect to make the contem-
plated shipments, and it was properly held that the
undertaking of defendant was without consideration,
unilateral and void.

If upon another trial there should be averment in
the complaint and evidence tending to prove that at
the time the contract between plaintiff and defend-
ant was entered into the defendant had notice that
th contract in evidence between this plaintiff and the
Western Railway Company was in existence, or knew
at that time that such contract was in contemplation
and before default in supplying cars had notice that
the contemplated contract had been made between
plaintiff and the Western Railway Company, and that
it, the defendant, had notice that the timbers it agreed
to transport for plaintiff were to be delivered to the

Western Railway Company in the performance of the latter company's said contract with plaintiff, then under this state of averment and evidence the measure of plaintiff's damages would be the profit he would have made by carrying out his contract with the Western Railway Company had he not been prevented from carrying it out by defendant's failure to transport the timbers for him in accordance with the contract sued on; and to show such damages he should be allowed to prove the difference between the costs of getting out and delivering the timbers including five dollars per car for transportation and the price he was to receive from the said railway company. The special circumstances which we have hypothesized taken in connection with notice to defendant of them take the case out of the general rule of damages obtaining in cases of failure by common carriers to carry and deliver, and bring it within the special rule formulated above, on the theory that such damages were within the contemplation of the parties.—*Vicksburg Railroad Co. v. Ragsdale*, 46 Miss. 458; *Fort Worth & Denver City R'y Co. v. Greathouse*, 82 Texas, 104; *Central Trust Co. v. S. & W. R. R. Co.*, 69 Fed. Rep. 683; *Gray v. St. L. I. M. & S. R'y Co.*, 54 Mo. App. 666; *Simpson v. L. & N. W. R'y Co.*, L. R. 1 Q. B. Div. 274; *Jameson v. Midland R'y Co.*, 50 L. T. (N. S.) 426; *Hamilton v. W. N. C. R. R. Co.*, 96 N. C. 398; *Mo. Pac. R'y Co. v. Nevin*, 31 Kan. 385; *Daughtery v. American Union Telegraph Co.*, 75 Ala. 168. Indeed the rule of admeasurement of damages under the circumstances stated is the same as upon a contract by which the plaintiff has undertaken to sell and deliver the property to the defendant at a stipulated price and has been prevented from performance by the wrong of the defendant: Profits plaintiff would have made had he been permitted to carry out the contract being the measure in either case.—*Bonifay v. Hassell*, 100 Ala. 296; *Griffin v. Ogletree*, 114 Ala. 343; *Watson v. Kirby*, 112 Ala. 436.

It was immaterial whether the defendant had or owned any cars at the date of or during the time cov-

ered by the contract. If the jury should find that it contracted to supply cars, it was the company's duty to procure them.

It was also beyond the issues in this case whether plaintiff "had to turn over his contract with the Western Railway Company to Vandiver & Co. to pay them what he owed them."

Reversed and remanded.