THE WESTERN UNION TELEGRAPH COMPANY v. T. W. SIMPSON, C. W. LINN, J. W. JENNINGS, AND W. D. BURKE, *Trustee in Bankruptcy for J. W. Jennings.*

No. 464.* (62 Pac. 901.)

1. PRACTICE, *District Court—Causes of Action—Motion to State Separately.* The petition in an action against a telegraph company for damages alleged the sending of three separate telegrams by the plaintiffs to a bank where they had a large credit, and failure on the part of the defendant company to deliver the messages within a reasonable time, thus causing delay in the shipment of cattle and consequent shrinkage in their weight. The defendant moved to require the plaintiffs to state separately and number their causes of action as set forth in the petition, but did not point out in the motion wherein the petition stated more than one cause of action. After the motion was overruled the defendant answered, setting up a specific defense in respect to each telegram. *Held*, not error to overrule the motion. (*Ambrose v. Parrott*, 28 Kan. 693.)

2. NEGLIGENCE—*Evidence—Findings of Jury.* Upon facts appearing in the record and referred to in the opinion, it is *held*, that the jury were warranted in concluding that the negligence of the defendant company caused the delay in the shipment of the plaintiffs' cattle and the loss resulting from such delay.

* Petition for order to certify allowed by supreme court December 20, 1900. Case pending.—REP.

Error from Franklin district court; C. A. SMART, judge. Opinion filed November 15, 1900. Affirmed.

*George H. Fearons,* and *Rossington, Smith & Histed,* for plaintiff in error.

*J. W. Deford,* and *W. A. Deford,* for defendants in error.

The opinion of the court was delivered by

MILTON, J. : In March, 1896, the defendants in error, T. W. Simpson, C. W. Linn, and J. W. Jennings, went from Agricola, Kan., to Montrose, Colo., to purchase cattle. They carried two letters of credit, one from the Bank of Waverly, Kansas, for $10,000, and one from the Bank of Williamsburg, Kansas, for $3000, entitling them to draw checks upon the said banks for the sums stated. On March 10 they purchased 144 head of steers, called "feeders," for $4000, and went to the First National Bank of Montrose and drew a draft upon the Bank of Waverly for that sum. The cashier of the First National Bank, desiring before cashing the draft to be assured that it would be honored, wrote the following telegram, which was sent at the request and expense of Simpson, Linn & Jennings :

"Filed 9:03 A. M.    18.    Paid 74 cts.
                                "MONTROSE, COLO., 3–10–1896.
*"The Bank of Waverly, Waverly, Kan.:* Will you pay Simpson & Jennings check, four thousand dollars, on your credit letter, March 5.    Wire quick.
                                        FIRST NATIONAL BANK."

This telegram was in fact received by the defendant company's agent at Waverly but was never delivered. The cattle were delivered to Simpson, Linn & Jennings in the stock-yards of the Denver & Rio

Grande Railroad Company at Montrose at about five o'clock P. M. on March 10, and were kept there until about eleven o'clock A. M. on March 12. The facilities for feeding in the stock-yards were inadequate and the water was very poor. On March 11 Simpson, Linn & Jennings purchased additional cattle, called "stockers," to the number of 299, at a cost of about $9000, and the same were placed in said stock-yards. Having received no response from the Bank of Waverly, and desiring to arrange for the payment of the entire purchase-price of all of the cattle, at about eleven o'clock in the forenoon of March 11 Simpson, Linn & Jennings wired the Bank of Waverly as follows:

"Pink.   Filed 11:10 A. M.   23.   Paid 89 cts.   Sent 11:13 A. M.
                        "MONTROSE, COLO., 3–11–1896.
"*The Bank of Waverly, Waverly, Kan.:*
    "Transfer to Midland National Bank, Kansas City, by wire, ten thousand dollars. Wire credit First National Bank, Montrose. Do n't pay check four thousand. *Quick.*   SIMPSON, LINN & JENNINGS."

A similar telegram with reference to the $3000 in the Bank of Williamsburg was sent to that bank at the time the foregoing message was sent, and at 3 : 30 o'clock P. M. on the same day the latter bank wired that the money had been transferred to the Midland National Bank as requested. No word having come from the Waverly bank, at 7 : 20 P. M. on the same day Simpson, Linn & Jennings wired the bank as follows:
                        "MONTROSE, COLO., 3–11–1896.
"*The Bank of Waverly, Waverly, Kan.:*
    "Explain why we have no reply to our message; here on expense, account your delay. Wire credit quick.        SIMPSON, LINN & JENNINGS."

This dispatch contained the extra word "deliver,"

meaning a direction to the operator at Waverly to deliver it at once, and it was written on a day-message blank. The operator at Montrose also inserted the word "quick." The last two telegrams sent to the Bank of Waverly were delivered to it at nine o'clock A. M. on March 12. Promptly thereafter the bank sent two telegrams to Simpson, Linn & Jennings and one to the First National Bank of Montrose. The substance of these messages was that the Bank of Waverly could not transfer the funds to the Kansas City bank as requested, but would honor their checks for. $10,000. At the time these messages were received, one train had been loaded with cattle and sent forward, and the second train was being loaded, the trains and the engines therefor having been ordered for that purpose at about nine P. M. of the preceding day. The arrangement whereby the shipment of the cattle had become possible, notwithstanding the failure to hear from the Waverly bank, resulted from a purely casual meeting between one of the plaintiffs below and the cashier of the Montrose Bank, a competitor of the First National Bank, on the street, after banking hours on March 11, the cashier stating that, if the First National Bank would not advance money on the letters of credit, his bank would arrange matters so that the plaintiffs could ship the cattle the next day. Upon receiving this assurance the trains were ordered, and they were sent out from Gunnison that night, arriving at Montrose about daylight on the 12th.

The $3000 from the bank at Williamsburg was used in part payment for the cattle, and on the day of the shipment satisfactory arrangements were made between the sellers and the buyers so that the shipment was completed. Payment for the cattle was finally

concluded through the First National Bank of Montrose four days later. It seems that the Bank of Waverly paid the $4000 draft which Simpson, Linn & Jennings had drawn on March 10, and thereafter transferred $6000 to the Midland Bank to the credit of the First National Bank of Montrose. The cattle arrived at their destination on March 14, and, two or three days later, they were weighed at that place. It was found that they had lost largely in weight on account of the condition of the cattle-pens at Montrose. Sufficient of the foregoing facts were alleged in the petition to state a cause of action against the telegraph company for damages. The answer, besides a general denial, alleged substantially that the messages to the Bank of Waverly were transmitted to the defendant under the conditions printed on the back of each message, and denied any liability arising from its failure to deliver the messages, since none of them were "repeated" messages. The answer also averred that the instructions contained in the message sent by the plaintiffs below, requesting the transfer of the money to the bank at Kansas City, would not have been complied with or performed in any event; also, that the message given to its operator at Montrose at 7:30 P. M. on March 11 could not have been transmitted to Waverly, for the reason that the telegraph company did not maintain a night office at that place. The reply denied that the messages were sent subject to the conditions printed on the back thereof.

Prior to filing the answer, the defendant moved "to require the plaintiffs to state separately and number their causes of action set forth in their petition in the above-entitled case." The motion was overruled, defendant excepting. Verdict and judgment were rendered in favor of the plaintiffs below.

Various errors are alleged, principally in respect to giving and refusing instructions. The first error assigned is that the court erred in overruling the motion to require the plaintiffs to state separately and number the causes of action set forth in their petition. Counsel urge that each message evidences a separate contract between the sender and the telegraph company, and that the court therefore erred in overruling the said motion. There is nothing in the motion itself to advise the trial court in respect to the proposition now contended for. While the code requires that separate causes of action shall be separately stated and numbered, and while the supreme court has held it error to overrule a motion directed against a petition which improperly fails to state separately and number the several causes of action it contains (*Pierce v. Bicknell*, 11 Kan. 262), yet we think the court did not err in the present case, for the reason that the motion did not point out wherein the plaintiffs' petition stated more than one cause of action, and for the further reason that the answer attempted to set up a specific defense to each of the alleged causes of action. See the case of *Ambrose v. Parrott*, 28 Kan. 693, in which it was held not error to overrule a motion similar to that under consideration. It may be added also that the record does not show that any real defense was made by the telegraph company in the trial of the case. Indeed, it appears that the counsel for the defendant in his argument to the jury said : "It would be useless for me to argue to you that the evidence in this case does not show negligence against the company."

Whether or not the admitted negligence of the defendant in failing to deliver the telegrams sent to the Bank of Waverly within a reasonable time after the

Telegraph Co. v. Simpson.

same were transmitted from Montrose caused a delay
in the shipment of the cattle, and a consequent shrink-
age in their weight, was the only question presented to
the jury. The instructions given fairly presented that
question. We think the jury were warranted in find-
ing that the negligence of the defendant resulted in
damage to the plaintiffs. If the first telegram sent
had been delivered promptly, the first cattle pur-
chased would have been paid for and might have
been shipped on the night of March 10 or early
the next morning. A prompt and favorable response
to the first message would have effectually estab-
lished the financial standing of the plaintiffs below
and would doubtless have enabled them to buy and
ship the other cattle without a vexatious delay. The
second telegram to the Bank of Waverly was not
sent until twenty-six hours after the first one had
been transmitted. In the meantime, Simpson, Linn
& Jennings had contracted to buy additional cattle to
the value of $9000. The lapse of time had doubtless
caused the managing officials of the First National
Bank of Montrose to desire a change of plan respect-
ing the handling of the credit claimed by the plain-
tiffs. The persistent failure of the telegraph company
to communicate the desire and request of the plaintiffs
to the Bank of Waverly made it necessary to delay,
and prevented the adoption by them of any other plan
of operation. The cattle were actually shipped under
an arrangement based apparently on the payment of
the $3000 by the Bank of Williamsburg and faith in
the plaintiffs and in the much-belated telegram from
the Waverly bank that it would honor the plaintiffs'
checks for $10,000. It is true that the last-named
telegram was not received until one train load of the
cattle had started, but the facts in the record indicate

Railroad Co. v. Keller.

that up to that time a bill of sale of the cattle was not given, and that it was actually given thereafter. We fail to see how the jurors could have avoided the conclusion that the negligence of the defendant company was responsible for the delay in the shipment of the cattle and the consequent loss. It also seems clear that the facts in evidence fully warranted the verdict for the amount awarded by the jury. In this view, it is unnecessary to discuss all the propositions set forth by counsel. No question concerning the admission of testimony can be considered, since no error in this respect is alleged. The instructions given having fully covered the issue arising upon the facts, it cannot be held that the refusal to give the requested instructions was error. The judgment of the district court is affirmed.