# Western Union Telegraph Company v. Albertville Canning Co.

## Failure to Deliver Message.

(Decided May 7, 1912. Rehearing denied May 28, 1912.
59 South. 755.)

1. *Damages; Special.*—While all damages which are suffered by a party to an executory contract which is breached, which are the natural and proximate consequences of such breach, are recoverable, speculative or special damages are not recoverable; nor can special damages (those not accruing in the usual course of things, but which arise from a special situation of the party aggrieved) be recovered unless such circumstances are known to both parties to the contract when made.

2. *Telegraphs and Telephones; Failure to Deliver Message; Damages.*—The message in this case considered and held not to show on its face that it was intended for the benefit of the canning company, and in the absence of proof that the telegraph company had knowledge of such facts, and that the failure to deliver would result in loss to the canning company through the decay of vegetables then ripening, the canning company could not recover for such loss, as it was special damages not necessarily resulting from the breach of the contract by the telegraph company.

APPEAL from Marshall Circuit Court .

Heard before Hon. W. W. HARALSON.

Action by the Albertville Canning Company against the Western Union Telegraph Company, for failure to deliver a message. Judgment for plaintiff and defendant appeals. Reversed and remanded.

STREET, ISBELL & BRADFORD, and CAMPBELL & JOHNSTON, for appellant. The decay of vegetables on account of the non arrival of cans, was, under the circumstances in this case, special damages, and not a proper element of recovery.—*Hadley v. Baxendale,* 9 Exch. 341; *W. U. T. Co. v. Way,* 83 Ala. 542; *Bell v. Reynolds,* 78 Ala. 511; *Daugherty v. A. U. T. Co.,* 75 Ala. 174; *So. Ry. Co. v. Mooy,* 58 South. 1016; 24 L. R. A. (N. S.) 134. Under plea 3 it was competent to establish the free delivery limit.—*W. U. T. Co. v. Henderson,* 89 Ala. 510; *W. U. T. Co. v. Albertville Canning Co.,* 167 Ala. 342.

E. O. McCORD, and THOMAS E. ORR, for appellee. Damages arising from the decay of vegetables sought to be canned by the shipment ordered was a natural and proximate consequence of a failure to deliver.—*W. U. T. Co. v. Way,* 83 Ala. 542; *W. U. T. Co. v. Northcutt,* 158 Ala. 577; *Daugherty v. A. U. T. Co.,* 75 Ala. 168; *Guilford, et al. v. W. U. T. Co.,* 50 South. 112; *Dickerson v. Finley,* 158 Ala. 419.

DE GRAFFENRIED, J.—In Alabama the general rule is that all damages which are suffered by a party to an executory contract by reason of the breach of the contract by the opposite party, and which are the natural and proximate consequences of such breach, are recoverable. This rule is qualified by the statement that merely speculative or contingent damages are not re-

coverable, and by the further statement that, where one of the parties to the contract is so situated that, if the contract is breached by the opposite party, the party aggrieved will, as the natural and proximate result of the breach, suffer special damages—damages not in the usual course of things, but which will spring from the special situation of the party aggrieved—then such special circumstances must be known to both parties to the contract when it is made, in order that such special damages may be recovered by the party aggrieved upon a breach of the contract by the opposite party. "In such cases the larger damages may be recovered as having been in the contemplation of both parties, and as naturally resulting, under· the special circumstances, from the breach itself."—*Adams Machine Co. v. South State Lumber Co.,* 2 Ala. App. 471, 56 South. 826; *Bixby-Theirson Lumber Co. v. Evans,* 167 Ala. 431, 52 South. 843, 29 L. R. A. (N. S.) 194, 140 Am. St. Rep. 47; *Daughtery v. Am. Union Telegraph Co.,* 75 Ala. 168, 51 Am. Rep. 435; *Telegraph Co. v. Way,* 83 Ala. 542, 4 South. 844.

When the damages sought to be recovered for the breach of a contract are such as naturally and proximately result from the breach of the contract, and are such as, in the usual course of things, naturally arise from the breach of such a contract, then all such damages, unless merely speculative or ·contingent, are recoverable, and the law does not stop to inquire whether such damages were within the contemplation of the parties when the contract was made or not. It is only when "special" or "larger" damages are sought to be recovered for the breach of a contract that the law stops to inquire whether the special or peculiar circumstances surrounding one of the parties at the time of making the contract, which gave rise to "special" or

"larger" damages by reason of the breach, were known to the opposite party to the contract at the time it was made.—*Bixby-Theirson Lumber Co. v. Evans, supra; Daughtery v. Am. Union Telegraph Co., supra; Telegraph Co. v. Way, supra.*

The rule above announced finds an apt illustration in the case of *Daughtery v. Am. Union Telegraph Co., supra.* In that case a cablegram was sent from America to Europe in cipher. The telegraph company therefore knew no more of its contents, or what it was about, than if it had been written in the hieroglyphics of some prehistoric race. The court, however, held the telegraph company liable, on account of its negligence in transmitting and delivering the cablegram, for all of the damages which naturally and proximately resulted from the breach of its contract arising in the ordinary course of things, but not for the "special" or "larger" damages caused thereby. In other words, the court was of the opinion that the telegraph company had no right to know anything about the contents of the message, or the purposes for which it was sent, unless the special circumstances of the sender or sendee were such that, if the contract for transmission and delivery was breached, a party to the telegram would suffer, not only the damages naturally and proximately resulting, in the usual course of things, from the breach of the contract, but extraordinary or special or larger damages.

1. The facts are that on the 27th day of July, 1908, J. L. Liles delivered to the appellant, at Albertville, a town in Marshall county, a telegram for transmission and delivery to J. D. Maddox, at Pell City, which was in the following words: "Send two thousand cans and dozen baskets by express. Send other cans by Southern." Liles paid the appellant the customary charges for transmitting and delivering the telegram; but,

through the negligence of the appellant, it was never delivered to Maddox. In fact, the telegram never reached Pell City, and the appellant offered no testimony tending to explain the reason for its default in that regard. It appears that Liles was a member of a partnership which did a canning business at Albertville, under the name of the Albertville Canning Company, and that he sent the telegram for and on behalf of the partnership. There is nothing, however, in the evience tending to show that the appellant *knew,* when it received the telegram, that he was a member of such firm, or that, in sending the telegram, he was acting for such firm. It may be that the appellant's agent, who received the telegram for transmission, knew these facts; but, if so, there is no evidence in the bill of exceptions authorizing such an inference. It further appears from the evidence that at the time the telegram was delivered the canning factory had eight acres of tomatoes, and that the tomatoes were ripening in the field. There is no evidence in the record, however, from which it can be inferred that the appellant or its agent knew this fact when the telegram was delivered.

It further appears from the evidence that the telegram was sent for the purpose of hurrying forward the shipment of 2,000 cans, in order that the tomatoes, which were ripening in the field, might be preserved from spoiling by putting them in cans as they ripened. The telegram shows on its face that Liles, the sender, was, for some reason, in urgent need of a quick shipment of cans; but it does not show that the *canning factory* needed the cans, or that the factory owned a tomato, or that a tomato would be lost if the telegram was not delivered. The fact that a telegram was sent, and that it contained directions for the immediate shipment of 2,000 cans, was notice to the company that, for

some reason, Liles was in urgent need of cans; but it was not notice that he or the plaintiff needed the cans in the canning business, or that any tomatoes or other vegetables would spoil as the natural and proximate result of a failure on the part of the appellant to transmit and deliver the telegram to Maddox within a reasonable time. There was abundant evidence to authorize the jury to infer that the plaintiff, by reason of the defendant's failure to deliver the telegram as it should have done, suffered, as the natural and proximate result of such failure, as "special" or "larger" damages, the amount for which they returned a verdict in favor of the appellees. It seems to us, however, that the damages which the appellees suffered in the loss of their tomatoes were damages which, though not contingent or speculative, but actual and measurable, they suffered by reason of their peculiar or special situation; that such damages, although the natural and proximate result of the breach by the appellant of its contract, were what we have above defined as "special" or "larger" damages; and that the bill of exceptions fails to show that the special circumstances surrounding the appellees when the telegram was delivered to the appellant, and which special circumstances gave rise to the damages to which we have referred, were known by the appellant or its agent, or made known to the appellant or its agent, when the telegram was delivered.—*Adams Machine Co. v. South State Lumber Co.,* 2 Ala. App. 471, 56 South. 826.

It may be that the special circumstances to which we have referred were known to the agent of appellant when the telegram was delivered to him for transmission, and that upon another trial evidence tending to show such knowledge may be adduced. There is no such evidence in the present record.

If the above telegram had been signed by the *canning factory,* instead of by Liles, then, taking into consideration the time of the year in which it was sent and the evident urgency of the situation, it might be that an entirely different conclusion might be reached by us as to the appellees' rights, under the evidence as it now appears in the bill of exceptions, to recover the "larger" damages suffered by them by reason of the appellant's default.   If the telegram had been signed by the canning factory, the uses for which the cans were urgently needed—the canning of perishable fruits or vegetables—might have been regarded as disclosed by the telegram itself.—*Western Union Telegraph Co. v. Reed,* 3 Ala. App. 253, 57 South. 83; *Western Union Telegraph Co. v. Henley,* 157 Ind. 90, 60 N. E. 682.   There is nothing, however, on the face of this telegram, signed by *Liles* and directed to *Maddox,* indicating that the cans were needed for a special purpose; and it is our understanding of the law that when articles are ordered to be shipped for a special purpose, and the party to whom they are to be shipped suffers special damages by reason of delay in the shipment, his special circumstances—the particular use to which the articles are to be put—must be known, or be made known, to the shipper at the time the order is given and accepted as a condition precedent to the recovery of such special damages.—24 Am. & Eng. Ency. Law (2d Ed.) p. 1155.

The rule above announced is based upon well-established decisions of the Supreme Court of Alabama; and, while in many states the rule does not seem to obtain (see *Mitchell v. Western Union Telegraph Co.,* 12 Tex. Civ. App. 262, 33 S. W. 1016; *Western Union Telegraph Co. v. Simpson,* 10 Kan. App. 473, 62 Pac. 901; 37 Cyc. 1772), the decisions of our Supreme Court—many of them rendered before any one now living was born—are binding upon us.

2. The question above discussed was properly raised by the appellant on the pleadings, on objections to the admission of certain evidence, and in certain written charges which it requested the court to give to the jury. The rulings of the court on the question as presented on the pleadings, in the admission of evidence, and in refusing certain of the written charges which the appellant requested it to give to the jury, were not in accordance with the above views, and for this reason this cause must be reversed and remanded to the court below for further proceedings in accordance with this opinion.

Reversed and remanded.