# Illinois Central R. R. Co. *v.* Brothers.

*Delay in Delivery of Freight.*

(Decided November 12, 1914. Rehearing denied January 21, 1915. 67 South. 628.)

1. *Damages; Measure; Breach of Contract.*—Ordinarily the measure of damages for the breach of a contract are those which are the natural consequences of the breach, and which may be reasonably deemed to have been in the contemplation of the parties to the contract: but loss of profits in a business where the data are uncertain, and damages which cannot be supposed to have been contemplated by the parties, are not recoverable.

2. *Carriers; Goods; Delay in Delivery; Damages.*—The delivery to a carrier of a cotton-gin, at or about the time the ginning season would begin, for shipment to a party residing in the cotton belt is not notice to the carrier that such party would engage in the ginning business, in such sense as to entitle the consignee to recover for loss of business, offered between the time when the gin should have been delivered and the time it actually was delivered.

APPEAL from Birmingham Ctiy Court.

Heard before Hon. JOHN H. MILLER.

Action by I. S. Brothers against The Illinois Cent. R. R. Co. for damages for failure to promptly deliver

freight.   Judgment for plaintiff and defendant appeals. Reversed and remanded.

PERCY, BENNERS & BURR, for appellant.   General profits expected to arise from collateral engagements are not recoverable in an action for breach of contract to deliver a chattel, where the profits to be made by the use of such chattel are necessarily speculative, uncertain and incapable of proof.—*Reed L. Co. v. Lewis,* 94 Ala. 696; *Watson v. Kirby,* 112 Ala. 436; *Southern R. R. Co. v. Coleman,* 153 Ala. 266.   Under the facts in this case the defendant had no notice of such profits as were sought to be shown, and the profits were both speculative and uncertain.—*Pilcher v. Central of Ga. R. R. Co.,* 155 Ala. 316; *W. U. Tel. Co. v. Albertville C. Co.,* 59 South. 755.

HORACE C. WILKINSON and G. R. HARSH, for appellee.   Conceding the principles contended for by the appellant, the damages here sought and proven are not speculative, as the basis of calculation was shown in dollars and cents.—*Bell v. Reynolds,* 78 Ala. 511; *Brigham v. Carlysle,* 78 Ala. 243; *W. U. Tel. Co. v. Way,* 83 Ala. 542; *Dickerson v. Findley,* 158 Ala. 149.

CRUM, J.—The Illinois Central Railroad Company received from the Gullett Gin Company, at Gullett, La., a cotton gin outfit consigned to I. S. Brothers, Tumlin Gap, Ala.   The car containing this shipment, after an unreasonable delay, was delivered to the Louisville & Nashville Railroad Company, a connecting carrier, at New Orleans, La., agreeably to the bill of lading.   The complaint alleges, and the evidence tends to show, that during the time intervening between the delivery of the gin to the initial carrier and the time it reach its desti-

[Illinois Central R. R. Co. v. Brothers.]

nation, 300 bales of cotton had been tendered to con-
signee by the public to be ginned, which, on account of
the unreasonable delay in the delivery of the gin, he
was prevented from accepting, and that he thereby lost
the profit, estimated at $1.40 per bale, which he would
have derived from the service. It was not alleged, nor
does the evidence tend to show, except as will be present-
ly considered, that the carrier at the time it made the
contract of carriage had any notice of the purpose for
which the gin was to be used by the consignee.

The several assignments of error present but one
question, i. e.: Can the consignee, under such circum-
stances, recover of the carrier the loss of profits which
the consignee might have earned in ginning the cotton
actually tendered during the unreasonable delay?

All collateral or minor questions relating to the meas-
ure of damages for breaches of contracts are subordi-
nate to, and must be determined in the light of, that
cardinal rule now so well settled by judicial decision
in this state, viz.: That "(1) those damages that are
the natural and proximate consequence of the breach
must always be considered; (2) such consequences as
from the nature and subject-matter of the contract may
be reasonably deemed to have been in the contemplation
of the parties at the time it was entered into; (3) dam-
ages which fairly may be supposed not to have been the
necessary and natural sequence of the breach shall not
be recovered, unless by the terms of the agreement or
by direct notice they are brought within the expectation
of the parties"; and "(4) losses of profit in a business
cannot be allowed unless the data of estimation are so
definite and certain that they can be ascertained reason-
ably by calculation, and then the party in fault must
have had notice, either from the nature of the contract
itself or by explanation of the circumstances at the time

the contract was made, that such damages would ensue from nonperformance"; and this rule is applicable as well to contracts of carriage as to contracts generally.— 3 Hutchinson on Carriers, § 1369, and cases cited; *Hadley v. Baxendale,* L. R., 9 Exch. 341; *Daughtery v. Am. Union Tel. Co.,* 75 Ala. 168, 51 Am. Rep. 435; *Pilcher v. C. of Ga. Ry. Co.,* 155 Ala. 316, 46 South. 765; *Western Union Tel. Co. v. Albertville Canning Co.,* 6 Ala. App. 344, 59 South. 755; *W. U. Tel. Co. v. Way,* 83 Ala. 542, 4 South. 844; *Reed Lumber Co. v. Lewis,* 94 Ala. 626, 10 South. 333; *Cassells Mill, etc., v. Strater, etc.,* 166 Ala. 274, 51 South. 969; *Moulthrop, etc., v. Hyett, etc.,* 105 Ala. 493, 17 South. 32, 53 Am. St. Rep. 139; *Dickerson v. Finley,* 158 Ala. 149, 48 South. 548; *Bixby-Theisen Lumber Co. v. Evans,* 174 Ala. 571, 57 South. 39; *Southern Ry. Co. v. Coleman,* 153 Ala. 266, 44 South. 837; *Ala. Chemical Co. v. Geiss,* 143 Ala. 591, 39 South. 255; *Trayick v. Sou. Ry. Co.,* 71 S. C. 82, 50 S. E. 549, 110 Am. St. Rep. 563; *Harvey v. Connecticut, etc.,* 124 Mass. 421, 26 Am. Rep. 673.

It seems to be conceded by counsel, as indeed it must be, that notice to the carrier, at the time of entering into the contract of carriage, of the particular use to which the gin was to be put by the consignee is essential to the right of recovery, and it is not contended that any recovery for special damages can be had, except for the profit which might have arisen from the ginning of the cotton actually tendered during the period of delay. It is not contended by appellee that any direct notice was given to the carrier, but it is insisted that the fact that a carrier receives for transportation a cotton-gin outfit in the month of September—the eve, it is said, of the cotton-ginning season—consigned to an individual in the cotton-growing section, is sufficient to carry the case to the jury on the question of *implied notice* to the

carrier that the consignee expected to immediately or presently set up and operate the gin at or in the vicinity of the destination for the public, for profit, and that it was within the province of the jury to assess damages for the loss of profit on the cotton actually tendered. It is not insisted that the carrier had any notice in fact of the purpose to which the gin was to be put, or that the consignee, or the nature of his business, was known to it; nor was it contended that any contract obligation, agreement, or understanding existed between the consignee and the persons, or any of them, who brought the cotton to his gin after the contract of carriage had been entered into. Unless the circumstances recited are sufficient to charge the carrier with such notice as the law requires, then confessedly there can be no recovery.

It is of the utmost importance, and is simple fairness, that every one entering into a contract obligation should know the extent of the risk he thereby assumes other than liability for the damages which may naturally and proximately flow from its breach; and he is entitled to have this information in such sort that it may fairly be said that such risk, in the event of a breach, was within the contemplation of both parties at the time the contract was entered into. Were it otherwise, the burden upon freedom of contract might become intolerable, for by the simplest form of contract a party might be made to suffer ruinous consequences. The rule imposes no hardship upon the opposite party, for he has but simply to give notice of the special circumstances when the obligation is assumed.

In the case of *British Sawmill Co. v. Nettleship,* L. R. 3 C. P. 499, it was said: "The knowledge must be brought home to the party sought to be charged, under such circumstances that he must know that the person he contracts with reasonably believes that he accepts the

contract with the special condition attached to it.
\* \* \* Knowledge on the part of the carrier is only
important if it forms part of the contract. It may be
that the knowledge is acquired casually from a stran-
ger; the person to whom the goods belong not knowing
or caring whether he had such knowledge or not. Knowl-
edge, in effect, can only be evidence of fraud, or of an
understanding by both parties that the contract is based
upon the circumstances which are communicated."

"Proof that the carrier had knowledge of the general
use to which the article was to be put will not be suffi-
cient to charge him with liability for loss of its use, or
the profits which would thereby have been made. The
special circumstances of the case requiring care and ex-
pedition must have been brought to his attention in such
way that his acceptance of the article under the circum-
stances could fairly be said to amount to an assumption
of the risks which naturally and proximately would flow
from his default."—3 Hutchinson on Carriers, § 1369;
authorities supra.

Manifestly, there were many uses to which the gin
might have been put by the consignee other than its oper-
ation for profit. He may have bought it to resell, or to
operate for his individual benefit, or to operate for the
public at some future time, or he may have ordered for
a customer or for accommodation, or to be used for dem-
onstration, or to lease it, and the like. The intended use
must be made *known* to the carrier, and not left to con-
jecture. In *Trayick v. Southern Ry. Co.,* 71 S. C. 82, 50
S. E. 549, 110 Am. St. Rep. 563, the carrier had negli-
gently delayed the delivery of a rice huller, depriving
the plaintiff of "its use during nearly all the rice-milling
season, and causing a number of persons who had en-
gaged plaintiff to hull their rice to take it elsewhere,"
whereby plaintiff lost the profit. The Supreme Court of

South Carolina, touching this subject, said: "We proceed to apply these principles to the facts of the case under consideration. A rice huller may be purchased for various purposes. For instance, it might be bought for private use, or for sale, or for making profit by hulling rice for the public. The case of *Hays v. Tel. Co.,* 70 S. C. 16, 48 S. E. 608 [67 L. R. A. 481, 106 Am. St. Rep. 731, 3 Ann. Cas. 424], decided that, when the object is to make profit, the party committing the act of wrong must, in some manner, have notice of this fact."—3 Hutchinson on Carriers, § 1369; *W. U. Tel. Co. v. Albertville Canning Co., supra; Harvey v. Connecticut, etc., supra.*

*Notice* is said to be "a crucial fact, which must be both *alleged* and *proven.*"—*Pilcher v. C. of Ga. Ry. Co. supra; Baxley v. Tallassee, etc., R. Co.,* 128 Ala. 183, 29 South. 451; *Reed Lumber Co. v. Lewis, supra.*

We are clear to the point that the mere fact that the carrier knew the article which it had agreed to transport was a gin, consigned by a manufacturer of gins to an individual in a cotton-growing section in the ginning season, was wholly insufficient to charge the carrier with notice of the facts so essential to the right of recovery. Even if the carrier had actually known that the consignee expected to operate the gin for profit, which he might expect from the public generally in his community, it may be seriously doubted that this fact alone was sufficient to authorize a recovery of the profits. At the time the contract was entered into, when the status of the parties was fixed, the consignee had no assurance that 300, or any other definite number of bales of cotton, would be tendered to him. What he may have *anticipated* was then certainly indefinite and uncertain, dependent upon many "incalculable contingencies." In *Bixby-Theisen Lumber Co. v. Evans, su-*

*pra,* it was said : "Profits such as the plaintiff may have expected to realize from the operation of the mill in its improved form," and which the parties doubtless contemplated as one result of the contract, were nevertheless speculative, "remote, and incapable of that clear and satisfactory proof which the law requires to constitute recoverable damages." See, also, the cases therein cited, and *Bixby, etc., v. Evans, supra; Dickerson v. Finley, supra; Cassells Mills v. Strater, etc., supra; Harvey v. Connecticut, etc., supra.* A decision of this question, however, is not essential in this case.

The question presented must be answered in the negative. The rulings of the trial court were not in accord with the conclusion we have reached, and the judgment must be reversed and the cause remanded.

Reversed and remanded.

